**REATA CONSTRUCTION
CORPORATION,
Petitioner,**

v.

**CITY OF DALLAS, Respondent.**

No. 02–1031.

Supreme Court of Texas.

Argued Dec. 12, 2004.

Decided June 30, 2006.

372

Lee L. Cameron Jr., Rebecca M. Alcantar, Amy Elizabeth Stewart, Jeffrey Osmon Marshall, Wilson Elser Moskovitz Edelman & Dicker LLP, Dallas, for petitioner.

Charles S. Black Jr., Asst. City Atty., Julie B. Essenburg, Office of the City Atty. of City of Dallas, Deborah G. Hankinson, Law Office of Deborah Hankinson PC, Dallas, for respondent.

Malinda York Crouch, Sr. Asst. City Atty., Houston, Elliot Clark, Winstead Sechrest & Minick, P.C., Rafael Edward Cruz, Office of the Atty. Gen., Kristofer S. Monson, Asst. Solicitor Gen., Don Wayne Cruse Jr., Asst. Solicitor Gen., Austin, Bruce S. Powers, Asst. County Atty., Houston, William M. Boyd, John R. Stooksberry, Boyd Veigel, P.C., McKinney, Robert C. Lyon, Robert Lyon & Associates, Rowlett, Bob Gorsky, Lyon Gorsky Baskett, et al., Dallas, Delmar L. Cain, Office of Gen. Counsel, College Station, Miles T. Bradshaw, Feldman & Rogers, L.L.P., Dallas, for amicus curiae.

Justice JOHNSON delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice MEDINA, and Justice GREEN joined.

We grant the City of Dallas's motion for rehearing. We withdraw our opinion of April 2, 2004, and substitute the following in its place.

The issue in this case is whether the City of Dallas has governmental immunity from suit for claims by Reata Construction Corporation arising from the City's alleged negligence. The court of appeals held that the City had immunity. We conclude that the City does not have immunity from suit as to Reata's claims which are germane to, connected with, and properly defensive to the City's claims, to the extent Reata's claims offset those asserted by the City. We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I. Background

The City of Dallas issued Dynamic Cable Construction Corporation, Inc., a temporary license to install fiber optic cable in Dallas. Dynamic subcontracted with Reata Construction Corporation to do the drilling for the project. Reata inadvertently drilled into a thirty-inch water main, flooding a nearby building owned by Southwest Properties Group, Inc. Southwest sued Dynamic and Reata for negligence, and some tenants of the building intervened. Reata filed a third-party claim against the City alleging that the City negligently misidentified the water main's location. Before answering Reata's third-party claim, the City intervened in the case, asserting negligence claims against Dynamic. A few weeks after intervening in the suit, the City answered Reata's petition and filed special exceptions asserting that Reata's claims were not within the Texas Tort Claims Act's waiver of immunity. See TEX. CIV. PRAC. & REM. CODE § 101.021. The City subsequently filed an amended plea in intervention asserting claims of negligence against Reata and a plea to the jurisdiction asserting governmental immunity from suit. Reata filed a response claiming that (1) governmental immunity did not apply because the City subjected itself to the trial court's jurisdiction by intervening in the lawsuit and seeking affirmative relief; (2) the Dallas City Charter and section 51.075 of the Texas Local Government Code contain express waivers of governmental immunity because they provide, respectively, that the City may "sue or be sued" and "plead and be impleaded"; (3) under the common law, the City could not assert governmental immunity for its actions in failing to properly identify the water main's location prior to 1970 because water services were considered a proprietary function; and (4) even if the Texas Tort Claims Act applied, Reata's claim fell

within the Act's waiver of immunity. The trial court denied the City's plea to the jurisdiction, and the City took an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

Rejecting each of Reata's asserted bases for a waiver of governmental immunity, the court of appeals reversed and dismissed Reata's claims against the City. 83 S.W.3d 400. The court of appeals held that even though the City intervened in the suit against Reata, by such action the City asserted its right to sue but did not waive its governmental immunity from suit. *Id.* at 398–400.

In *Anderson, Clayton & Co. v. State ex rel. Allred,* 122 Tex. 530, 62 S.W.2d 107, 110 (1933), we stated: "[W]here a state voluntarily files a suit and submits its rights for judicial determination it will be bound thereby and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." But the court of appeals relied on other language in that opinion providing that the State, having invoked the jurisdiction of the district court, was "subject to the same rules as other litigants, except in so far as such rules may be modified in favor of the State by statute or may be inapplicable or unenforceable because of exemptions inherent in sovereignty." 83 S.W.3d at 399 (quoting *Anderson,* 62 S.W.2d at 110). The court of appeals concluded that when a governmental entity intervenes in a lawsuit, "sovereign immunity still forecloses suit against that governmental entity." *Id.*

In this Court, Reata asserts (1) governmental immunity did not apply because the City subjected itself to the trial court's jurisdiction by intervening in the lawsuit and seeking affirmative relief; (2) the Dallas City Charter and section 51.075 of the Texas Local Government Code contain express waivers of governmental immunity because they provide, respectively, that the City may "sue or be sued" and "plead and be impleaded"; and (3) even if the Texas Tort Claims Act applied, Reata stated a claim within the Act's waiver of immunity.

## II. Sovereign Immunity

"Sovereign immunity protects the State from lawsuits for money damages." *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002). Political subdivisions of the state, including cities, are entitled to such immunity—referred to as governmental immunity—unless it has been waived.[1] *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). Sovereign immunity encompasses immunity from suit, which bars a suit unless the state has consented, and immunity from liability, which protects the state from judgments even if it has consented to the suit. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). We have held that sovereign immunity from suit deprives a trial court of subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004); *Jones,* 8 S.W.3d at 638.

Sovereign immunity is a common-law doctrine that initially developed without any legislative or constitutional enactment. *See Cohens v. Virginia,* 6 Wheat. 264, 19 U.S. 264, 293, 5 L.Ed. 257 (1821) (recognizing the doctrine without citing statutory or constitutional authority);

---

1. For ease of reference, we will use the term "sovereign immunity" to reference both sovereign immunity and governmental immunity.

Hosner v. De Young, 1 Tex. 764, 769 (1846) (same); *see also Tex. A & M University–Kingsville v. Lawson,* 87 S.W.3d 518, 520 (Tex.2002). We have consistently deferred to the Legislature to *waive* such immunity. *See IT–Davy,* 74 S.W.3d at 854; *Guillory v. Port of Houston Auth.,* 845 S.W.2d 812, 813 (Tex.1993); *Duhart v. State,* 610 S.W.2d 740, 741 (Tex.1980); *Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 298 (Tex. 1976). We have previously discussed the possibility that a governmental entity might waive its immunity by certain actions, even absent a legislative waiver of immunity. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705–06 (Tex.2003). However, there is tension between the concept of a governmental entity *waiving* its immunity from suit by some action independent from the Legislature's waiving immunity and the principle that only the Legislature can waive sovereign immunity. *See IT–Davy,* 74 S.W.3d at 853. There is also tension between the concept of a governmental entity waiving its immunity from suit and the principle that a court's lack of subject-matter jurisdiction generally cannot be waived. *See Fed. Underwriters Exch. v. Pugh,* 141 Tex. 539, 174 S.W.2d 598, 600 (1943). Recognizing that sovereign immunity is a common-law doctrine, we have not foreclosed the possibility that the judiciary may modify or abrogate such immunity by modifying the common law. *See Taylor,* 106 S.W.3d at 695–96; *see also Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 593 (Tex.2001) (Hecht, J., concurring) (noting that judicial abolition of immunity may be necessary to prompt the Legislature to enact a reasoned system for determining the government's responsibility for its torts). Therefore, it remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance.

We have generally deferred to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy issues involved. *See IT–Davy,* 74 S.W.3d at 854. A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes. *Id.* The Legislature has expressed its desire to preserve its interest in managing fiscal matters through the appropriations process by maintaining sovereign immunity unless it has clearly and unambiguously stated otherwise. TEX. GOV'T CODE § 311.034. The United States Supreme Court has also recognized that suits for money damages against states "may threaten the financial integrity of the States" and that "at the time of the founding, many of the States could have been forced into insolvency but for their immunity from private suits for money damages." *Alden v. Maine,* 527 U.S. 706, 750, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). However, if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted. Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity. In this situation, we believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's

claims against it. *See Guar. Trust Co. v. United States,* 304 U.S. 126, 134–35, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) (noting that the rule allowing claims against a foreign sovereign that has asserted its own claims is assumed to be founded on principles of justice); *see also Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983) (stating that fundamental fairness requires parties to be heard on the merits of their cases).

## III. Analysis

### A. The City's Claim for Relief

Although there may have been some question after *Anderson* regarding whether sovereign immunity continues to exist when an affirmative claim for relief is filed by a governmental entity, subsequent cases indicate that under such circumstances immunity from suit no longer completely exists for the governmental entity.[2] In *State v. Humble Oil & Refining Co.,* 141 Tex. 40, 169 S.W.2d 707, 708 (1943), we considered whether a defendant in a tax suit could assert an offset against the State for taxes it had previously overpaid. The court of appeals concluded that the rule announced in *Anderson* applied: the defendant was entitled to claim an offset for any matter dependent upon or connected with the State's suit. *Id.* at 709. We stated that "[w]e have no fault to find with the rule of law announced in ... *Anderson* ... when applied in a proper case." *Id.* However, we went on to hold that the *Anderson* rule did not apply in *Humble Oil* because (1) its application would abolish the rule that taxes due the State cannot be offset, and (2) the defendant's claim

was not connected with the State's claim as the two involved taxes for different months and years. *Id.* at 710. While our opinion in *Humble Oil* did not specifically address the issue of whether the trial court had jurisdiction over Humble's claims against the State, we acknowledged that in certain circumstances, a defendant would be entitled to assert a claim against the State if the State filed suit.

In *Kinnear v. Texas Commission on Human Rights,* 14 S.W.3d 299, 300 (Tex. 2000), we acknowledged that the trial court had jurisdiction over claims against the State in a case where the State had filed suit. In *Kinnear,* the Texas Commission on Human Rights filed suit against Kinnear, alleging that he had violated the Texas Fair Housing Act. *Id.* at 299. Kinnear counterclaimed for attorney's fees as provided by the Act, and when he prevailed, the trial court awarded them. *Id.* at 300. In response to the question of whether the trial court had jurisdiction, we said that "[b]ecause the Commission initiated [the] proceeding under the Texas Fair Housing Act, and Kinnear claimed attorney fees as a consequence of that suit, the jurisdictional question in this case was answered when the Commission filed suit." *Id.* Later, four concurring justices in a plurality opinion cited *Kinnear* and *Anderson* for the proposition that "the State can waive immunity by filing suit." *IT–Davy,* 74 S.W.3d at 861 (Hecht, J., concurring).

In circumstances such as those now before us, where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the govern-

---

**2.** The City argues that *Anderson* is in conflict with two prior cases from this Court in which we held immunity had not been waived as to claims brought against the governmental entity plaintiffs by the defendants. *See Borden v. Houston,* 2 Tex. 594, 611 (1847); *Bates v.*

*Republic,* 2 Tex. 616, 618 (1847). However, those cases are distinguishable from *Anderson* because they involved claims by the defendants for set-offs unrelated to the governmental entities' claims. *Borden,* 2 Tex. at 595–96; *Bates,* 2 Tex. at 616–17.

mental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity. And, our decisions that immunity from suit does not bar claims against the governmental entity if the claims are connected to, germane to, and defensive to the claims asserted by the entity, in effect, modified the common-law immunity doctrine and, to an extent, abrogated immunity of the entity that filed suit. *See Humble Oil,* 169 S.W.2d at 710; *Anderson,* 62 S.W.2d at 110.

■ Therefore, we hold that the decision by the City of Dallas to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to claims the City asserts. Once it asserts affirmative claims for monetary recovery, the City must participate in the litigation process as an ordinary litigant, save for the limitation that the City continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the City's claims. Moreover, we see no substantive difference between a decision by the City to file an original suit and the City's decision to file its claim as an intervenor in Southwest's suit. Accordingly, when the City filed its affirmative claims for relief as an intervenor, the trial court acquired subject-matter jurisdiction over claims made against the City which were connected to, germane to, and properly defensive to the matters on which the City based its claim for damages. *See Anderson,* 62 S.W.2d at 110. Absent the Legislature's waiver of the City's immunity from suit, however, the

trial court did not acquire jurisdiction over a claim for damages against the City in excess of damages sufficient to offset the City's recovery, if any. *See City of La-Porte v. Barfield,* 898 S.W.2d 288, 297 (Tex.1995); *Anderson,* 62 S.W.2d at 110 (holding that when a governmental entity files suit, "the defense will be entitled to plead and prove all matters properly defensive").[3]

Because the City's assertion of claims for damages against Reata means that the City does not have immunity from Reata's claims to the limited extent we have explained above, we must consider Reata's remaining arguments to determine if the City's immunity from suit has been completely waived in some manner.

## B. Texas Tort Claims Act

■ Reata claims that the court of appeals erred in holding that its claims against the City do not fit within any waiver of immunity under the Tort Claims Act. Specifically, Reata claims that the court of appeals did not liberally construe its pleadings as asserting damages for personal injuries. *See Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002) (noting that pleadings should be liberally construed in favor of jurisdiction).

Through the Tort Claims Act, the Legislature has waived the City's immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

■ The court of appeals concluded that none of the damages claimed against the

---

**3.** At the time *Anderson* was decided, a claim of an offset was referred to as a defensive matter. *See Sw. Contract Purchase Corp. v.*

*McGee,* 120 Tex. 240, 36 S.W.2d 978, 979 (1931) (stating "defendant in error pleaded in defense ... certain offsets and defenses").

City—property and mental anguish damages—were recoverable under that subsection. 83 S.W.3d at 396. Reata argues that a claim for personal injury damages was made as the intervenors asserted that fumes from generators used in the flooded building after the water shorted out the electricity made them sick. However, section 101.021(2) only waives immunity when the governmental unit is the user of the property. *San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244, 245–46 (Tex.2004). There is no claim that the City was the user of the generators.

■ Reata also argues that if its claim was not properly pleaded to demonstrate a waiver of immunity, it should be given the opportunity to amend before its case is dismissed. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226–27 (Tex.2004). But, in the trial court, the City twice filed special exceptions claiming that Reata failed to state a cause of action for which the City could be liable under the Tort Claims Act. Reata amended its petition twice, but its pleadings still fail to demonstrate a waiver of immunity. Accordingly, we hold that the court of appeals correctly determined that Reata's claims do not fit within any waiver of immunity under the Tort Claims Act and that Reata was not entitled to replead.

### C. Waiver of Immunity by the Local Government Code and City Charter

■ Reata also claims the City's immunity from suit is waived by section 51.075 of the Local Government Code, which provides that a home-rule municipality "may plead and be impleaded in any court." *See* TEX. LOC. GOV'T CODE § 51.075. However, waiver of immunity for tort claims is governed by the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ch. 101; *Miranda,* 133 S.W.3d at 224–25 (holding that the governmental entity was im-

mune from suit for a tort unless it was expressly waived by the Tort Claims Act). Under rules of statutory construction, we give precedence to the Tort Claims Act over section 51.075 because the Tort Claims Act is the later-enacted, more specific statute regarding waiver of immunity in tort cases. *See* TEX. GOV'T CODE § 311.026. Moreover, in *Tooke v. City of Mexia,* 197 S.W.3d 325, 342, 2006 WL 1792223 (Tex.2006), we have held that the phrase "plead and be impleaded" in section 51.075 does not clearly and unambiguously reflect legislative intent to waive immunity from suit. *See Taylor,* 106 S.W.3d at 697–98 (Tex.2003).

■ Reata also claims the City's immunity is waived by the Dallas City Charter which states that the City may "sue and be sued" and "implead and be impleaded." DALLAS, TEX., CITY CHARTER ch. II, § 1(2), (3). As we explain in *Tooke,* such phrases, separately or together, do not comprise a clear and unambiguous waiver of immunity to suit. *Tooke,* 197 S.W.3d at 342. The City Charter provision does not waive the City's immunity from suit. *See id.*

### IV. Conclusion

Because the City asserted affirmative claims for monetary relief against Reata, the City does not have immunity from Reata's claims germane to, connected to, and properly defensive to claims asserted by the City, to the extent any recovery on those claims will offset any recovery by the City from Reata. We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Justice BRISTER filed a concurrence in which Justice HECHT and Justice O'NEILL joined.

Justice WILLETT did not participate in the decision.

Justice BRISTER, joined by Justice HECHT and Justice O'NEILL, concurring.

I join in the Court's judgment, as American law has long held that a government waives immunity from suit by filing an affirmative claim in court. I write separately because I disagree with the State that this rule is mistaken, and with the Court that we must partially abrogate sovereign immunity because the rule is in "tension" with other jurisdictional rules. Instead, sovereign immunity has always had its own set of jurisdictional rules because jurisdiction over private and public parties is simply different.

In all cases, whether the parties are public or private, a court must have jurisdiction to issue a binding judgment. But "[j]urisdiction," as the United States Supreme Court recently observed, "is a word of many, too many, meanings."[1] Both subject-matter jurisdiction and personal jurisdiction are "jurisdictional" in that a court cannot enter judgment without them.[2] Sovereign immunity is also "jurisdictional," but in ways that do not fit neatly into the other two categories.

Subject-matter jurisdiction concerns a court's power over cases.[3] It stems from the doctrine of separation of powers, and aims to keep the judiciary from encroaching on subjects properly belonging to another branch of government.[4] Subject-matter jurisdiction cannot be waived or conferred by agreement, must be considered by a court *sua sponte*, and can be raised for the first time on appeal.[5]

Personal jurisdiction, by contrast, concerns a court's power over parties.[6] A court cannot enter judgment against a party who has not been haled into court through proper service,[7] and its writ extends beyond its borders only as far as due process allows.[8] Personal jurisdiction can be voluntarily waived by appearance,[9] or impliedly by an untimely objection.[10]

Throughout Texas history, we have held that sovereign immunity is "jurisdictional"[11] but without characterizing it as either subject-matter or personal jurisdiction. To the contrary, in *Anderson, Clayton* we held that when the State waived immunity by filing suit, the trial court "acquired jurisdiction of the *parties and subject-mat-*

1. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks omitted).

2. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996); *see also Anderson, Clayton & Co. v. State*, 122 Tex. 530, 62 S.W.2d 107 (1933).

3. *See Arbaugh v. Y & H Corp.*, —— U.S. ——, ——, 126 S.Ct. 1235, 1244, 163 L.Ed.2d 1097 (2006); *CSR Ltd.*, 925 S.W.2d at 594.

4. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993).

5. *See Univ. of Texas Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (2004).

6. *See CSR Ltd.*, 925 S.W.2d at 594.

7. *See Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990).

8. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

9. *See Hilburn v. Jennings*, 698 S.W.2d 99, 100 (Tex.1985).

10. *See* TEX. R. CIV. P. 120a.

11. *See, e.g., Missouri Pacific R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex.1970); *State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 581–82 (1961); *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 841 (1958); *Walsh v. Univ. of Tex.*, 169

*ter.*" [12]

In the last seven years we have addressed sovereign immunity almost exclusively in terms of subject-matter jurisdiction.[13] This approach began with a per curiam opinion in 1999,[14] which distinguished a 1988 opinion that appeared to say the opposite.[15] But acknowledging that sovereign immunity implicates subject-matter jurisdiction does not mean it does not implicate personal jurisdiction, too. Indeed, the earliest Texas cases, dating even from the Republic, addressed sovereign immunity in terms of "amenability" to suit,[16] a term borrowed for personal jurisdiction.[17]

These early Texas cases were not aberrations; sovereign immunity has historically been considered a problem primarily of personal jurisdiction. Blackstone addressed sovereign immunity under "The Rights of Persons," concluding that sovereign immunity arises from the nature of the sovereign party, not the subject matter of the sovereign's case:

Hence it is, that no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him. For all jurisdiction implies superiority of power: authority to try would be vain and idle, without an authority to redress; and the sentence of a court would be contemptible, unless that court had power to command the execution of it; but who, says Finch, shall command the king? [18]

Once bereft of kings, the earliest American cases still viewed sovereign immunity in terms of personal jurisdiction.[19] In *The Federalist* No. 81, Alexander Hamilton borrowed the language of personal juris-

---

S.W.2d 993, 994 (Tex.Civ.App.-El Paso 1942, writ ref'd).

**12.** *Anderson, Clayton,* 62 S.W.2d at 110 (emphasis added).

**13.** *See, e.g., Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Dep't of Transp. v. Garza,* 70 S.W.3d 802, 808 (Tex. 2002); *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 585 (Tex.2001).

**14.** *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999) (per curiam).

**15.** *See Davis v. City of San Antonio,* 752 S.W.2d 518, 520 (Tex.1988) ("We do not read our opinion in *Duhart* [a previous sovereign immunity case] as holding that the trial court lacked subject matter jurisdiction of the case and that any judgment rendered for the plaintiff would have been void."). Between 1988 and 1999, the Seventh Court of Appeals had suggested sovereign immunity concerned both. *See Bd. of County Comm'rs of County of Beaver Okl. v. Amarillo Hosp. Dist.,* 835 S.W.2d 115, 130 n. 2 (Tex.App.-Amarillo 1992, no writ) ("[S]overeign immunity concerns *both* subject matter jurisdiction and personal jurisdiction.") (emphasis added);

*Laykin v. McFall,* 830 S.W.2d 266, 267 n. 1 (Tex.App.-Amarillo 1992, no writ) (same).

**16.** *See, e.g., Kenedy v. Jarvis,* 1 S.W. 191, 194 (Tex.1886); *Bd. of Land Comm'rs v. Walling,* Dallam 524 (Tex.1843) ("[I]t is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent . . .").

**17.** *See, e.g.,* TEX. FAM. CODE § 157.375(a) ("While in this state for the sole purpose of compelling the return of a child through a habeas corpus proceeding, the relator is not *amenable* to civil process and is not subject to the jurisdiction of any civil court except the court in which the writ is pending.") (emphasis added); TEX. R. CIV. P. 120a(1) (providing for special appearances to object to jurisdiction "over the person or property of the defendant on the ground that such party or property is not *amenable* to process issued by the courts of this State") (emphasis added).

**18.** 1 William Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND *235.

**19.** *See generally* Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction,* 115 HARV.L.REV. 1559 (2002).

diction in stating, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual WITHOUT ITS CONSENT."[20] In the United States Supreme Court's first major opinion, the state of Georgia refused to file a plea or appear at oral argument for fear that its appearance would waive sovereign immunity.[21]

The full story is that sovereign immunity includes concerns about both subject-matter and personal jurisdiction, but is identical to neither. In terms of subject matter, whether a government ought to compensate particular claimants involves policy issues beyond the traditional scope of judicial proceedings.[22] But at the same time, there is some incongruity in saying that routine tort and contract suits are beyond the traditional subject matter of the courts simply because one party is a government employee.[23]

Similarly, concerns about a court's power to order the government to appear, give evidence, and pay a judgment share much in common with personal jurisdictional limits over foreign parties. Yet, it seems awkward to say Texas courts cannot "reach" other Texas governmental units, when all necessarily share the same space, and sometimes the same buildings.

Given these similarities and differences with each doctrine, it should come as no surprise that the jurisdictional rules governing sovereign immunity borrow from both but are identical to neither. Thus, just like subject-matter jurisdiction, sovereign immunity may be raised by the court even if the parties do not.[24] But like personal jurisdiction, Texas law has long held that a governmental entity waives immunity by filing suit on an affirmative claim.[25]

Federal cases addressing the sovereign immunity of the states reflect this same hybrid nature, including elements of both subject-matter and personal jurisdiction.[26] And like the Texas rule, there is no question that states waive immunity from suit

**20.** THE FEDERALIST NO. 81 (emphasis in original).

**21.** *See* Nelson, *supra* note 19 at 1598 (discussing *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793)).

**22.** *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 414 (Tex.1997) (Hecht, J., concurring) ("[N]ot all the factors that weigh in determining the State's liability on its contracts can be assessed in a judicial proceeding.").

**23.** *See State v. Snyder*, 66 Tex. 687, 18 S.W. 106, 107 (1886) ("The state, as a plaintiff, has the same right as other plaintiffs to institute and maintain actions in the district courts upon any cause of action of which, under the terms of the constitution, such courts have jurisdiction, and so by force of the jurisdiction conferred on such courts by the constitution, and without reference to any statutory authorization.").

**24.** *Compare Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004) ("The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed."), *with Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998) (raising ripeness issue *sua sponte* as an element of subject-matter jurisdiction).

**25.** *Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex.2000); *Anderson, Clayton & Co. v. State*, 122 Tex. 530, 62 S.W.2d 107, 110 (1939).

**26.** *See Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 394, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring) ("In certain respects, the immunity [accorded states by the Eleventh Amendment] bears substantial similarity to personal jurisdiction requirements, since it can be waived and courts need not raise the issue sua sponte. Permitting the immunity to be raised at any stage of the proceedings, in contrast, is more consistent with regarding [it] as a limit on the federal courts' subject-matter jurisdiction.") (citations omitted).

in federal court by claiming an interpleaded fund,[27] filing a bankruptcy claim,[28] or removing a case to federal court.[29]

Thus, the jurisdictional rules of sovereign immunity cannot be derived by simply plugging in the rules of subject-matter or personal jurisdiction governing private parties and cases. For one thing, those rules conflict. And because sovereign immunity includes elements of both but all of neither, there is no general rule about which should apply or be preempted.

Rather than abrogating sovereign immunity piecemeal or adopting rules governing either subject-matter or personal jurisdiction wholesale, we should look to those rules for guidance, applying them (or a hybrid of them) according to the purposes and peculiar necessities of sovereign immunity. This is precisely what the Court has done when considering arguments to limit or abolish sovereign immunity completely, looking to the purposes behind the doctrine for guidance.[30] Considering those same purposes here shows why the traditional rule that a sovereign's affirmative claim waives immunity from suit is the right one.

First, sovereign immunity is founded on the presumption that governments will do justice to their citizens, by one means or another.[31] By filing suit in court, a government makes clear that it has chosen to pursue justice (and presumably not just for itself) through litigation, at least in that particular case.

Second, "[c]oercion ... is incompatible with sovereignty."[32] Without some indication of consent, "the powers of judicial tribunals, however great they may be, are not of a character so transcendent as to enable them to afford [a] remedy."[33] But when a government voluntarily seeks affirmative relief from the courts, it is not coercion but cooperation for the courts to adjudicate the matter.

Third, sovereign immunity protects the government from the distraction and expenses that would ensue if citizens could sue the government whenever they pleased.[34] But again, when the govern-

---

27. See *Clark v. Barnard*, 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883).

28. See *Gardner v. New Jersey*, 329 U.S. 565, 573–75, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *see also Cent. Va. Cmty. Coll. v. Katz*, —— U.S. ——, ——, 126 S.Ct. 990, 1004, 163 L.Ed.2d 945 (2006) (holding that States agreed "not to assert any sovereign immunity defense they might have had in proceedings brought" in bankruptcy).

29. See *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

30. See *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695–96 (Tex.2003).

31. *State v. Snyder*, 66 Tex. 687, 18 S.W. 106, 109 (1886) ("It is to be conclusively presumed, in the absence of a statute authorizing suit against the state in reference to a given matter, that it fully recognizes every just claim the citizen has against it, that in its own way it will do justice in reference thereto, and that it has ability to do so; and this is one of the reasons why no suit can be brought against the state without its consent."); *Borden v. Houston*, 2 Tex. 594, 611–12 (1847); *Bd. of Land Comm'rs v. Walling*, Dallam 524 (Tex.1843).

32. *Borden*, 2 Tex. at 611.

33. *Walling*, Dallam 524 (cited with approval by this Court in *Kenedy v. Jarvis*, 1 S.W. 191, 194 (Tex.1886)); *accord, Snyder*, 18 S.W. at 106, 110; *Bates v. Republic*, 2 Tex. 616 (1847).

34. *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex.2002); *Walling*, Dallam at 525–26 (Tex.1843) ("The experience of ages and the wisdom of the most enlightened statesmen and judicial expositors have sanctioned the doctrine that less injury would arise from the delay or even the denial of justice to individuals than from the

ment brings its own affirmative claims, it has obviously concluded that the distraction and expense of litigation is worthwhile in that particular case.

Fourth, the protection sovereign immunity affords to the public fisc suggests that a government waiver by filing a claim should be limited to that claim's extent.[35] Absent sovereign immunity, policy decisions regarding government spending would be made by judges and juries, not the Legislature.[36] That might still be the case if, when a government asserted its own claim, it waived sovereign immunity as to much larger counterclaims and entirely different transactions. By filing suit on a claim, a government consents to have the courts decide its entitlement to a particular sum, but no more.

Finally, while courts in these cases see separation among the branches, parties sued by the State may see only different parts of the same tree. This paradoxical three-in-one structure (which no doubt resonated with the trinitarian Founders)[37] requires the courts at some point to insist that "[t]here is not one law for the sovereign and another for the subject."[38] A rule allowing governments to make a claim but preventing all offsetting claims looks less like sovereign immunity than sovereign inequity.

Thus, the traditional rule of limited waiver by appearance is consistent with all of the purposes of sovereign immunity. It is not in "tension" with the jurisdictional rules governing private parties; it is simply a different rule.

Nor do I see any unresolvable tension between this rule and our frequent statements that sovereign immunity must be waived by the Legislature in clear and unambiguous terms,[39] for several reasons. First, while the Legislature has taken an active role in deciding which particular suits may be filed *against* governmental units,[40] it has not played the same role in limiting which particular suits may be filed *by* them. Trying to collect an affirmative claim does not raise the same kinds of concerns as trying to avoid one.

Second, while the Legislature may waive immunity in individual suits, in recent years it has done so quite rarely.[41] Given the press of other business in a rapidly growing state, it is unrealistic to expect immunity decisions to be made piecemeal rather than collectively. The reasons for strictly construing waiver for whole classes

distraction and imbecility consequent upon the government's being involved in continual and harassing controversies at the will or caprice of every citizen in the community.").

**35.** *State v. Humble Oil & Ref. Co.*, 141 Tex. 40, 169 S.W.2d 707 (1943); *Snyder*, 18 S.W. at 110; *Borden*, 2 Tex. at 611–12 (1847); *Bates*, 2 Tex. at 618.

**36.** *IT–Davy*, 74 S.W.3d at 854 ("Subjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments."); *Bates*, 2 Tex. at 618.

**37.** *Cf.* Note, *The Twenty Dollars Clause*, 118 HARV.L.REV. 1665, 1680 (2005) ("In an analogy that would have resonated with the

Founders, the trilogy of life, liberty, and property was as the Christian trinity of Father, Son, and Holy Spirit: three-in-one; the same, but different.").

**38.** *Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998, 1000 (1898) (quoting *People v. Stephens*, 71 N.Y. 527, 549).

**39.** *See, e.g., Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex.2003); *IT–Davy*, 74 S.W.3d at 854; *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex.1994); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980).

**40.** *See IT–Davy*, 74 S.W.3d at 862 (Hecht, J., concurring).

**41.** *See id.*

of suits against the government are not the same when a single government unit files a single case.

Finally, when governments bring suit, they must do so through agents who ultimately derive their authority from the Legislature.[42] Those agents generally are not authorized to waive immunity from liability, or immunity from suit in individual cases. But when they file suit on an affirmative claim, they must be doing so with legislative authorization. If the rule were otherwise, it is not clear how a government could ever assert its own claims.

This Court found it "well settled" more than 100 years ago that governments who file suit must follow the same rules as the governed:

It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes a suitor in its own courts, or a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual.[43]

When a government voluntarily enters a contract, it waives sovereign immunity from liability (though not suit) to that extent;[44] when a government voluntarily files suit, it waives sovereign immunity from suit (though not liability) to that extent as well. Because the City of Dallas filed an affirmative claim here, it waived immunity from suit to that extent.

---

**42.** *See Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio,* 53 S.W.3d 310, 316 (Tex. 2001).

**43.** *Fristoe,* 45 S.W. at 999.

**44.** *See Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405–06 (Tex.1997).