Opinion issued December 31, 2008




 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00399-CV






METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY,
TEXAS, Appellant


V.


CUBIC TRANSPORTATION SYSTEMS, INC., Appellee






On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2005-17997






DISSENTING OPINION ON DENIAL OF REHEARING


 I respectfully dissent from the panel's denial of rehearing. I would withdraw
the panel's opinion of August 21, 2008 and issue the following opinion.

 This is an interlocutory appeal from an order of the trial court entered on
April 20, 2007, denying appellant Metropolitan Transit Authority of Harris County,
Texas's (Metro's) motion for partial summary judgment based on governmental
immunity. The majority agrees with appellee Cubic Transportation Systems, Inc.
(Cubic) that Metro's governmental immunity to Cubic's claims is waived by the
retroactive application of sections 271.151-.160 of the Texas Local Government
Code, which became effective September 1, 2005. See Act of May 23, 2005, 79th
Leg., R.S., ch. 604, § 1, 2005 Tex. Gen. Laws 1548 (current version at Tex. Loc.
Gov't Code Ann. §§ 271.151-.160 (Vernon 2006)). Metro claims that its filing of
a counterclaim against Cubic on April 13, 2005, prior to the effective date of the 2005
Act, constituted a common-law waiver of immunity under Reata Construction Corp.
v. City of Dallas, 197 S.W.3d 371, 376-77 (Tex. 2006), (1) which provides a much more
limited waiver of immunity than the 2005 Act. I agree with Metro that the filing of
its counterclaim against Cubic constituted a waiver of governmental immunity to suit
and that its immunity is waived under the common law, not the 2005 Act. I would
reverse the trial court's denial of Metro's motion for partial summary judgment and
render partial summary judgment in favor of Metro.

 Section 271.152 of the 2005 Act provides: 

 A local government entity that is authorized by statute or the
constitution to enter into a contract and that enters into a contract subject
to this subchapter waives sovereign immunity to suit for the purpose of
adjudicating a claim for breach of the contract, subject to the terms and
conditions of this subchapter.


Tex. Loc. Gov't Code Ann. § 271.152. The 2005 Act took effect September 1,
2005. See Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 3, 2005 Tex. Gen. Laws
1548, 1549 (September 1, 2005 effective date), reprinted following Tex. Loc. Gov't
Code Ann. § 271.152. Section 2 of the 2005 Act provides, with respect to
retroactivity:

 SECTION 2. Sections 271.152, 271.153, and 271.154, Local
Government Code, as added by this Act, apply to a claim that arises
under a contract executed before the effective date of this Act only if
sovereign immunity has not been waived with respect to the claim
before the effective date of this Act. A claim that arises under a contract
executed before the effective date of this Act and with respect to which
sovereign immunity has been waived is governed by the law in effect on
the date the contract was executed, and the former law is continued in
effect for that purpose.


Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen. Laws 1548, 1549.

 It is undisputed that Metro is a local government entity, that it executed the
contract with Cubic that is the subject of this suit in 2002, before the September 1,
2005 effective date of the 2005 Act, and that the contract is of the type subject to the
2005 Act. The only question, therefore, is whether Metro's filing of its counterclaim
on April 13, 2005, prior to the effective date of the Act, waived its immunity to suit
under the law in effect at the time the contract was executed.

 Under Texas law, governmental immunity consists of two parts: immunity from
liability and immunity from suit. Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex.
2006). Immunity from suit concerns whether the state has consented to be sued,
thereby vesting the trial court with subject matter jurisdiction. Kinnear v. Tex.
Comm'n on Human Rights, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam). By
entering into a contract like that at issue in this suit, a governmental entity like Metro
waives its immunity from liability, but it does not thereby waive its immunity from
suit. Tooke, 197 S.W.3d at 332. 

 In Reata, the supreme court reiterated its prior holdings that "[s]overeign
immunity protects the State from lawsuits for money damages" and that sovereign
immunity encompasses both immunity from suit and immunity from liability. 197
S.W.3d 371, 374 (Tex. 2006). (2) It stated that sovereign immunity is a common-law
doctrine that initially developed without any legislative or constitutional enactment. 
Id. (citing Cohens v. Virginia, 6 Wheat. 264, 19 U.S. 264, 293 (1821)). It
acknowledged that it had "consistently deferred to the Legislature to waive such
immunity," but it also pointed out that it had "previously discussed the possibility that
a governmental entity may waive its immunity by certain actions, even absent a
legislative waiver of immunity." Id. at 375. It opined that, because sovereign
immunity is a common-law doctrine, "it remains the judiciary's responsibility to
define the boundaries of the common-law doctrine and to determine under what
circumstances sovereign immunity exists in the first instance." Id.

 The supreme court explained the general deference of the courts to the
Legislature to waive immunity on the ground that the Legislature is better able to
address the conflicting policy issues involved. Id. It observed,"A lack of immunity
may hamper governmental functions by requiring tax resources to be used for
defending lawsuits and paying judgments rather than using those resources for their
intended purposes." Id. The court reasoned, however, that "if a governmental entity
interjects itself into or chooses to engage in litigation to assert affirmative claims for
monetary damages, the entity will presumably have made a decision to expend
resources to pay litigation costs." Id. If the opposing party's claims could then be
used only to offset the government's recovery, no tax resources would be called upon
to pay the judgment and the fiscal planning of the governmental entity should not be
disrupted. Id. 

 The Court concluded that "it would be fundamentally unfair to allow a
governmental entity to assert affirmative claims against a party while claiming it had
immunity as to the party's claims against it." Id. Therefore, it held, "When a
government voluntarily enters a contract, it waives sovereign immunity from liability
(though not suit) to that extent; when a government voluntarily files suit, it waives
sovereign immunity from suit (though not liability) to that extent as well." Id. at 384. 
Under this reasoning, upon the assertion of affirmative claims for monetary recovery,
a governmental entity becomes subject under the common law to suit on claims
"germane to, connected with and properly defensive to" the claims asserted by the
plaintiff and obligated to "participate in the litigation process as an ordinary litigant,
save for the limitation that [it] continues to have immunity from affirmative damage
claims against it for monetary relief exceeding amounts necessary to offset [its]
claims." Id. at 377.

 Metro executed the contract at issue in this case in 2002, thereby waiving its
governmental immunity to liability. See Tooke, 197 S.W.3d at 332. In April 2005,
before the effective date of the 2005 Act, it filed a counterclaim for damages against
Cubic. I would hold, in accordance with Reata, that Metro waived its governmental
immunity to suit under the common law by filing its counterclaim and thereby
conferred subject matter jurisdiction on the trial court to decide claims made against
it by Cubic "germane to, connected with and properly defensive to" its counterclaim
and became subject to liability to Cubic for monetary relief not exceeding amounts
necessary to offset its claims against Cubic.

 The majority opines, however, that "the Reata opinion itself does not directly
address the issue" of waiver but that "the supreme court has subsequently drawn a
clear line between a statutory waiver of immunity and a party's right under Reata to
offset a claim by the state or its political subdivision." Metro. Transit Auth. of Harris
County, Texas v. Cubic Transp. Sys., Inc., No. 01-07-00399-CV, slip op. at 5 (Tex.
App.--Houston [1st Dist.] Aug. 21, 2008, no pet. h.). It claims that "[i]n several
cases, the supreme court has characterized the Reata rule as a situation in which
immunity simply does not exist, rather than a situation in which governmental
immunity is waived." Id. (citing City of Midland v. Goerlitz, 201 S.W.3d 689, 690
(Tex. 2006); City of Houston v. United Water Servs., 201 S.W.3d 690, 691 (Tex.
2006); Metro. Transit Auth. v. M.E.B. Eng'g, Inc., 201 S.W.3d 692, 693 (Tex. 2006);
City of Irving v. Inform Constr., Inc., 201 S.W.3d 693, 694 (Tex. 2006)). 

 I disagree with the majority's reading of Reata and its progeny. The issue in
Reata was whether filing a counterclaim waives immunity to suit under the common
law. The majority, however, reads Reata and its progeny as holding that immunity
to suit never existed and therefore could not be waived, and thus Metro, having no
immunity to waive, did not waive its immunity under the common law by filing its
counterclaim prior to the effective date of the 2005 Act. I do not believe the
majority's reading is supported by the plain language of either Reata or its progeny. 
See Goerlitz, 201 S.W.3d at 690 (holding that "sue and be sued" language in city
charter did not clearly and unambiguously waive city's immunity from suit); United
Water Servs., 201 S.W.3d at 691 (same); M.E.B. Eng'g, Inc., 201 S.W.3d at 693
(holding that statute providing that transportation authority may "sue and be sued"
was not clear and unambiguous waiver of immunity from suit); Inform Constr., Inc.,
201 S.W.3d at 694 (holding that city did not have immunity from suit for claims
germane to, connected with, and properly defensive to city's compulsory
counterclaim for breach of contract to extent contractor's claims acted as offset
against city); see also Texas Dept. of Transp. v. Precision Solar Controls, Inc., 220
S.W.3d 494, 494 (Tex. 2007) (remanding for consideration of whether filing of
counterclaim by state agency waived immunity for intentional tort claim like
Precision's to extent of offset).

 I would hold that the trial court erred in denying Metro's motion for partial
summary judgment based on governmental immunity because Metro's filing of its
counterclaim on April 13, 2005 waived its immunity to suit prior to the September 1,
2005 effective date of the 2005 Act and, under Section 2 of the Act, waivers of
sovereign immunity to suit prior to the effective date of the Act are governed by the
law in effect on the date the contract was executed, which is carried forward for that
purpose. 

 I would sustain Metro's sole point of error.Conclusion

 I would reverse the trial court's April 20, 2007 order denying Metro's motion
for partial summary judgment and render partial summary judgment holding that
Metro's governmental immunity to suit is waived only with respect to claims germane
to, connected with, and properly defensive to the claims asserted by Metro and only
to the extent that the affirmative damage claims against Metro for monetary relief do
not exceed amounts necessary to offset Metro's claims. 




 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.

Justice Keyes, dissenting.
1. See also Reata Constr. Corp. v. City of Dallas, No. 02-1031, 2004 WL 726906 (Tex.
Apr. 2, 2004) (per curiam) ("Reata I") (identifying common law waiver of sovereign
immunity from suit by filing counterclaim) (text of opinion available at
www.supreme.courts.state.tx.us), withdrawn on reh'g, 197 S.W.3d 371 (2006). 
2. Like the supreme court in Reata, I use the term "sovereign immunity" to refer to both
sovereign immunity and governmental immunity. See Reata, 197 S.W.3d at 374 n.1.