IN THE SUPREME COURT OF TEXAS
 
════════════
No. 09-0794
════════════
 
LTTS Charter School, Inc. 
d/b/a Universal Academy, Petitioner,
 
v.
 
C2 Construction, Inc., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth 
District of Texas
════════════════════════════════════════════════════
 
 
Argued December 7, 2010
 
 
            
Justice Guzman, joined by 
Chief Justice Jefferson and Justice Medina, 
dissenting.
 
 
            
A party’s ability to take an interlocutory appeal is a limited exception 
to the general rule that only final orders are appealable. As applicable here, 
the contours of that exception are found in sections 51.014(a)(8) and 101.001(3) of the Civil Practice and Remedies Code. 
Despite these limits, the Court embarks on a perilous expedition through the 
Education Code in an attempt to locate some indicia that the Legislature 
intended to allow privately run, open-enrollment charter schools to take this 
circumscribed form of appeal. In so doing, the Court ventures beyond the narrow 
procedural question presented in this case: whether a privately run, 
open-enrollment charter school is a “governmental unit” as defined by section 
101.001(3) of the Civil Practice and Remedies Code. If it is, then an 
interlocutory appeal is proper from denial of a plea to the jurisdiction by the 
school, as authorized by section 51.014(a)(8). But, 
because it is not, I would affirm the court of appeals. Privately run, 
open-enrollment charter schools do not meet the Legislature’s definition as set 
out in section 101.001(3), and therefore no interlocutory appeal may be taken 
from an order granting or denying a plea to the jurisdiction by such a 
school.
            
Moreover, not only does the Court allow for an interlocutory appeal that 
is contrary to the expressed intent of the Legislature, the Court has also 
effectively answered an important substantive question that is not before us: 
what type of immunity does a privately run, open-enrollment charter school 
possess? Specifically, do such schools: (1) possess governmental immunity from 
suit, (2) merely have immunity from liability, or (3) lack immunity 
entirely? The Court’s reasoning, while masquerading as an answer to the narrow 
procedural issue before us, portends to address the merits of this immunity 
question. By doing so, the Court provides courts below with a signal that such 
schools possess immunity from suit. As a result, a private, nonprofit 
corporation can take on the mantle of governmental immunity, leaving other 
litigants wrongfully deprived of their day in court and without an opportunity 
to have this issue addressed through the rigors of our adversarial system. 
Accordingly, I must respectfully dissent.
I. 
Interlocutory Appeal Under Section 51.014(a)(8)
            
LTTS Charter 
School, Inc. (LTTS), is a private, nonprofit 
corporation, operating an open-enrollment charter school. LTTS does so under 
authority of a charter issued by the State Board of Education, pursuant to the 
charter school regime established by Chapter 12 of the Education Code. It is 
being sued by C2 Construction for breach of contract relating to the 
construction of new facilities. LTTS filed a plea to the jurisdiction, asserting 
governmental immunity. The trial court denied that plea, and when LTTS attempted 
an interlocutory appeal, the court of appeals dismissed its appeal for lack of 
jurisdiction, holding that LTTS is not a governmental unit under section 
101.001(3). 288 S.W.3d 31, 38.
            
Civil Practice and Remedies Code section 51.014(a)(8) allows immediate 
appeal of an order denying or granting a plea to the jurisdiction by a 
governmental unit and, in doing so, incorporates by reference section 
101.001(3)’s definition of what constitutes a 
governmental unit. Tex. Civ. Prac. & 
Rem. Code § 51.014(a)(8). In construing 
section 51.014, it is “the Legislature’s intent that section 51.014 be strictly 
construed as a narrow exception to the general rule that only final judgments 
and orders are appealable.” Bally Total Fitness Corp. v. 
Jackson, 53 S.W.3d 352, 355 (Tex. 2001) (quotation marks omitted). 
LTTS asserts that it is a “governmental unit” for purposes of section 
51.014(a)(8) under two provisions found in section 
101.001(3). Specifically, LTTS argues that it is a governmental unit both as a 
“school district” under section 101.001(3)(B), and also 
as “any other institution, agency, or organ of government” as provided by 
section 101.001(3)(D).[1]          
II. Privately Run, Open-Enrollment Charter Schools Are Not 
Governmental Units
            
A. “Any Other Institution, Agency, or Organ of Government” Under 
Section 101.001(3)(D) and “School District” Under 
Section 101.001(3)(B)
 
            
The Court holds that LTTS is a governmental unit under section 
101.001(3)(D), concluding it qualifies as “any other 
institution, agency, or organ of government the status and authority of which 
are derived from the Constitution of Texas or from laws passed by the 
legislature under the constitution.” Tex. Civ. Prac. & Rem. Code 
§ 101.001(3)(D). The first part of that 
definition, “any other institution, agency, or organ of government,” appears 
quite broad. But that apparent breadth is circumscribed by the language that 
follows: “status and authority of which are derived from the Constitution of 
Texas or from laws passed by the legislature under the constitution.” The 
linchpin of section 101.001(3)(D) is the word “derive.” 
“Derive” means “to receive or obtain from a source or origin.” Random House Dictionary of 
the English Language 536 (2d ed. 1987). The plain language of 
section 101.001(3)(D) thus covers only two classes of 
governmental entities: those whose status and authority comes directly from our 
Constitution, and those whose status and authority is received or obtained by a 
legislative enactment. See Tex. 
Civ. Prac. & Rem. Code § 101.001(3)(D).
            
Unquestionably, LTTS does not derive 
its status from the Constitution. We therefore examine whether it falls within 
the other class of entities covered by section 101.001(3)(D)—those whose status and authority is conferred by a 
legislative enactment. LTTS does not fall within that class either, because it 
does not obtain or receive status or authority from any statute or other 
enactment. Rather, its status is derived from a charter granted by the State 
Board of Education. See Tex. 
Educ. Code §§ 12.101, 
.113. If LTTS’s charter is revoked, or if the commissioner 
of education denies its renewal, see id. §§ 12.115, .116, LTTS will 
cease to have any kind of governmental status and will simply be a private, 
nonprofit corporation. See id. § 12.1161(a) (“[I]f the commissioner 
revokes or denies the renewal of a charter of an open-enrollment charter school . . . the school may not: (1) 
continue to operate under this subchapter; or (2) receive state funds under this 
subchapter.”). In point of fact, although the Education Code authorizes the 
State Board of Education to grant charters, it does not itself grant them to any 
particular entities. Therefore, LTTS does not derive its status or authority 
from any legislative enactment.
            
LTTS also asserts that it is a governmental unit under section 
101.001(3)(B) as a “political subdivision, 
specifically, a school district.” The Court does not reach that question. I 
would hold that the plain meaning of “school district” does not cover a 
privately operated, open-enrollment charter school. A school district is a 
“political subdivision,” Tex. 
Civ. Prac. & Rem. Code § 101.001(3)(B), 
exercising “jurisdiction over a portion of the State,” Guar. Petroleum Corp. 
v. Armstrong, 609 S.W.2d 529, 531 (Tex. 1980). Rather than exercising 
jurisdiction, an open-enrollment charter school “provide[s] instruction to 
students at one or more” locations, and “does not have authority to impose 
taxes.” Tex. Educ. 
Code § 12.102(1), 
(4). Furthermore, the Legislature, far from defining 
charter schools as school districts, generally goes to great lengths in the 
Education Code to list each separately, a clear indication that a charter school 
is not equivalent to a school district. See, e.g., 
id. § 7.009.
            
Rather than employing this strict textual analysis to determine whether 
the requirements of section 101.001(3) are met, the Court largely ignores the 
statutory text and instead meanders through a wide-ranging consideration of 
Chapter 12 of the Education Code. Seeking to buttress its conclusion, the Court 
cites sections of the Education Code that generally describe how open-enrollment 
charter schools operate, but are irrelevant to the narrow procedural issue 
before us. The Court thus mistakenly focuses only on the inclusive, general part 
of the definition “institution, agency, or organ of government,” while 
disregarding the limiting language “status and authority of which are derived . . . from laws passed by the 
legislature under the constitution.” Tex. Civ. Prac. & Rem. Code 
§ 101.001(3)(D), thereby rendering meaningless the 
limiting language in that section and thwarting the Legislature’s intent. The 
Court is also oblivious to the rule that interlocutory appeals are disfavored, 
and that section 51.014 is to be strictly construed accordingly. See Bally 
Total Fitness, 53 S.W.3d at 
355.
            
The Court makes a bold but brief effort to identify legislative 
enactments that confer status and authority on LTTS under section 101.001(3)(D). It particularly cites sections 12.104 and 12.105 of the 
Education Code, asserting that charter schools derive authority and status 
respectively from those enactments. But section 12.104 does not confer authority 
on LTTS, or on any other charter school. See Tex. Educ. Code § 12.104. It merely 
provides that charter schools have the same powers as public schools under Title 
2 of the Education Code. See id. Whether a particular entity like LTTS 
is an open-enrollment charter school, and is thus able to avail itself of those powers, is entirely dependent on the grant of 
a charter from the State Board of Education. See id. §§ 12.101, .113. Section 12.105 likewise does not confer 
status on LTTS, or any other charter school, but instead provides that 
open-enrollment charter schools are part of the public school system. See id. 
§ 12.105. As with section 12.104, whether any particular entity is an 
open-enrollment charter school—and hence part of the public school 
system—depends on the grant of a charter from the State Board of 
Education.
            
The Court also cites Education Code section 12.1053 as conferring 
governmental status on open-enrollment charter schools. But, in addition to the 
fact that it does not confer status for the reasons discussed above, an 
examination of section 12.1053 demonstrates a clear intent to only apply very 
specific definitions and provisions from the Government and Local Government 
Codes to charter schools. It defines open-enrollment charter schools as (1) 
“governmental entit[ies]” 
under subchapter D, Government Code Chapter 2252 (providing that real property 
is held in trust); (2) “governmental entit[ies]” under subchapter B, Local Government Code Chapter 271 
(addressing competitive bidding on certain public works contracts); (3) 
“political subdivision[s]” under subchapter A, Government Code Chapter 2254 
(governing professional services contracts); and (4) “local government” under 
Government Code sections 2256.009 to 2256.016 (regulating authorized 
investments). Tex. Educ. Code 
§ 12.1053. None of those four definitions is the same 
as “‘governmental unit’ under Civil Practice and Remedies Code section 
101.001(3),” which is, after all, the inquiry here.
            
Finally, the Court notes that “[s]everal 
statutes discuss the authority that open-enrollment charter schools may exercise 
under their charters.” __ S.W.3d __ (emphasis added). But this merely 
underscores the flaw in the Court’s reasoning: open-enrollment charter schools 
derive status and authority under the charters granted to them by the 
State Board of Education, not from any legislative enactment.
            
This is not to say that the Legislature could never allow a privately 
run, open-enrollment charter school like LTTS to take an interlocutory appeal. 
And, contrary to the Court’s understanding, I am not suggesting that only a 
legislative enactment specifically naming each charter school would suffice, or 
that the Legislature must approve each charter application. __ 
S.W.3d __. Rather, had the Legislature chosen to do so, it could readily 
have provided for interlocutory appeals by open-enrollment charter schools as 
a class. For example, it could have amended the interlocutory appeal 
statute. Cf. Tex. Civ. Prac. 
& Rem. Code § 51.014(a)(6) (authorizing interlocutory appeal 
from an order denying a motion for summary judgment “based in whole or in part 
upon a claim against or defense by a member of the electronic or print media”). 
But, the Legislature did not so choose. Cf. Entergy Gulf States, Inc. v. 
Summers, 282 S.W.3d 433, 463 (Tex. 2009) (Willett, J., concurring) (citation 
omitted) (“[T]he ‘surest guide’ to what lawmakers intended is what lawmakers 
enacted.”). Nor is this to say that an interlocutory appeal would always be 
improper for a publicly run, open-enrollment charter school—such a school 
would likely be a governmental unit independent of its charter.[2] But LTTS is not a publicly run school, 
and the Legislature simply has not granted privately run, open-enrollment 
charter schools a right to interlocutory appeal. The Court errs in granting them 
that right today.
            
B. Comparison to Public Universities and Junior College 
Districts
            
The 
Legislature’s treatment of public universities and junior colleges under section 
101.001(3) illustrates the actual manner in which the Legislature designates 
entities as governmental units under that section, and further highlights the 
flaw in the Court’s reasoning. Specifically, junior college districts are 
governmental units under section 101.001(3)(B) because 
they are listed in that subsection, whereas public universities are governmental 
units under section 101.001(3)(D) because their authority and status is 
conferred by legislative enactments.
            
Civil Practice and Remedies Code section 101.001(3)(B) includes “junior college district[s],” as well as school 
districts, in its enumeration of entities that are governmental units. Tex. Civ. Prac. & Rem. Code 
§ 101.001(3)(B). By contrast, public universities 
are treated differently from both junior colleges and charter schools. Although, 
like charter schools, they are not listed anywhere in section 101.001(3), public 
universities nevertheless satisfy the precise standards articulated by section 
101.001(3)(D), which requires that an entity’s 
governmental status be “derived from . . . laws passed by the 
legislature.” Id. § 101.001(3)(D) 
(emphasis added). The extensive provisions of Title III of the Education Code, 
entitled “Higher Education,” confer status and authority on the various public 
universities of this state. See, e.g., Tex. Educ. Code § 67.02 (“The 
University of Texas at Austin is a coeducational institution of higher education 
within The University of Texas System.”); id. §§ 109.001, .01 
(establishing the Texas Tech University System and providing that Texas Tech 
University “is a coeducational institution of higher education located in the 
city of Lubbock”).
            
Unlike public universities, specific charter schools are not mentioned in 
the Education Code, nor any other statute, and they therefore do not derive 
status as governmental units from legislation, as section 101.001(3)(D) requires. Rather, like junior colleges, the Legislature 
has provided administrative procedures for their creation, but has not actually 
conferred status on them itself. See id. §§ 130.011–.013 (providing 
for establishment of junior college districts by joint action of the 
coordinating board, commissioner of higher education, and the independent school 
district or city that wishes to establish a junior college district); id. 
§§ 12.101, .113 (authorizing the State Board of 
Education to grant charters).[3] But, unlike junior colleges, charter 
schools are not among the entities enumerated in Civil Practice and 
Remedies Code section 101.001(3). The Court largely ignores the rest of section 
101.001(3) in its analysis, focusing almost entirely on subsection (D). But, in 
construing a statute, “[w]e determine legislative 
intent from the entire act and not just isolated portions.” 20801, Inc. v. Parker, 249 S.W.3d 392, 396 (Tex. 
2008).
            
Accordingly, I would conclude that privately run, open-enrollment charter 
schools such as LTTS do not fall within the plain language of section 
101.001(3)(D), because they gain and lose their status 
and authority through agency actions, not by legislative enactments. I would 
also conclude that they are not “school districts,” and therefore are not 
governmental units under section 101.001(3)(B). Thus, I 
would hold that LTTS is not entitled to an interlocutory appeal under section 
51.014(a)(8).
III. The 
Court Effectively Answers a Substantive Question Not Before Us
            
The Court’s reasoning further effectively answers a question not before 
us today—that is, whether privately run, open-enrollment charter schools like 
LTTS possess governmental immunity from suit. Although the Court professes to 
reserve judgment on this issue, the reasoning of the Court’s opinion appears to 
be animated by a concern raised by the Solicitor General. See __ S.W.3d 
__ n.44. ­The Solicitor General asserts that it would be “illogical” 
to hold that open-enrollment charter schools are not governmental units under 
section 101.001(3)(D), because if they are not, the waiver in the Tort Claims 
Act allegedly would not apply. In other words, charter schools would be 
governmental entities that enjoy immunity from suit in the first instance, but 
they would not be “governmental units” under section 101.001(3), for which 
certain immunity is waived by the Tort Claims Act. The Solicitor General further 
reasons that such a result would leave charter schools entirely immune from tort 
claims, whereas school districts’ immunity is waived by the 
Act.
            
The Court endorses this reasoning. __ S.W.3d __ 
n.44. (­“[A]ssuming arguendo the Legislature can grant immunity from liability, 
it would seem odd for lawmakers to imbue open-enrollment charter schools with 
greater tort immunity than cities, counties, school districts, and other purely 
governmental entities.”). But the Solicitor General’s argument fails for a 
multitude of reasons. First, public school districts themselves possess near 
complete immunity under the Tort Claims Act,[4] thus proving the argument that the 
Legislature could not have intended to treat public schools and privately run, 
open-enrollment charter schools disparately to be a non-sequitur. There is no 
parade of horribles that would result from holding 
that private charter schools are not governmental units under section 
101.001(3), even if this meant they possessed complete immunity. Only a narrow 
group of tort actions would be affected.
            
Second, as discussed above, the Court avoids the question of whether an 
open-enrollment charter school is a “school district” today, but we will 
inevitably face this issue in the future. If open-enrollment charter schools do 
possess immunity from suit, as the Court’s opinion suggests, it follows that the 
only way immunity would be waived for contract claims such as those brought here 
would be through the contract-claims waiver in Local Government Code section 
271.152. And that waiver would most likely apply to privately run, 
open-enrollment charter schools only if such schools are “school districts,” 
which, as previously explained, they are not. This is because the definition of 
“local governmental entity” to which that waiver applies contains no catch-all 
provision equivalent to section 101.001(3)(D). 
See Tex. Loc. 
Gov’t Code 
§ 271.151(3). Rather, it is limited to a list of 
entities nearly identical to those found in section 101.001(3)(B). Both definitions cover the following entities: (1) city 
or municipality, (2) school district or junior college district, and (3) “levee 
improvement district, drainage district, irrigation district, water improvement 
district, water control and improvement district, water control and preservation 
district, freshwater supply district, navigation district, conservation and 
reclamation district, soil conservation district, communication district, public 
health district, and river authority.” Compare id. § 271.151(3)(A)–(C), with Tex. Civ. Prac. & Rem. Code 
§ 101.001(3)(B). The only substantive difference 
between the two is that section 271.151(3) excludes counties, while section 
101.001(3)(B) includes them. Compare Tex. Loc. Gov’t Code § 271.151(3), with Tex. 
Civ. Prac. & Rem. Code § 101.001(3)(B). 
Section 271.152’s waiver is therefore limited to the same governmental units 
that fall under section 101.001(3)(B), with the 
exception of counties. And because open-enrollment charter schools are not 
included in section 271.152’s list of entities, they also would not fall within 
its waiver of immunity.[5]
            
Third, given that an open-enrollment charter school’s very existence as a 
public school is dependent on an agency’s grant of a charter, and is subject to 
revocation at the whim of an agency, it is unclear what 
the effect of a charter revocation mid-suit would have on the school’s supposed 
immunity under the Court’s reasoning. Would the school retain immunity, even 
though it was no longer a governmental unit? Or would the school immediately 
lose immunity, even though sued for events occurring while a charter school? And 
what if a private nonprofit corporation operating a charter 
school were sued on a basis removed from its provision of education 
services? Would that private corporation enjoy immunity simply because it 
operated a charter school? These sorts of difficult questions deserve the 
opportunity for consideration and debate in our adversarial system, and further 
illustrate the infirmity of the Court’s implicit reaching of the substantive 
issue not before us.
            
Finally, such reasoning simply begs the question of whether privately 
run, open-enrollment charter schools are immune at all. 
It is far from clear that the Legislature can confer immunity upon private 
entities like LTTS. Sovereign immunity (and by extension, governmental immunity, 
which is derived from it) is a common-law doctrine of the courts. See Tooke 
v. City of Mexia, 197 S.W.3d 
325, 331 (Tex. 2006). Generally, the Legislature’s role is limited to 
waiving immunity, while recognition of immunity’s existence is left to the 
courts. See id. at 331–32 (noting that 
the Court has long upheld the rule of sovereign immunity, while deferring to the 
Legislature to waive it). Indeed, after a review of the doctrine’s foundations, 
we concluded that “it remains the judiciary’s responsibility to define the 
boundaries of the . . . doctrine 
and to determine under what circumstances sovereign immunity exists in the 
first instance.” Reata Constr. Co. v. 
City of Dallas, 197 S.W.3d 371, 375 (Tex. 2006) (emphasis added); see 
also City of Galveston v. State, 217 S.W.3d 466, 475 (Tex. 2007) (Willett, 
J., dissenting) (“The Legislature’s focus is critical but confined; its role is 
limited to waiving pre-existing common-law immunity.”). We further noted 
that “[s]overeign immunity is a common-law doctrine 
that initially developed without any legislative or constitutional enactment.” 
Reata, 197 S.W.3d at 
374. In part for policy reasons, we defer to the Legislature to 
waive such immunity as has been recognized by the courts. See id. 
at 375 (“We have generally deferred to the 
Legislature to waive immunity because the Legislature is better suited to 
address the conflicting policy issues . . . .”). Our 
sovereign immunity jurisprudence therefore suggests, at least as a general 
matter, that courts create or recognize sovereign immunity, while the 
Legislature waives it.[6]
            
It is true that there are some forms of statutory immunity. 
See, e.g., Franka v. Velasquez, 
332 S.W.3d 367, 371 n.9 (Tex. 2011) (holding that section 101.106 of the Civil 
Practice and Remedies Code confers immunity in some instances to employees of 
governmental units); Entergy Gulf States, 282 S.W.3d at 436 (noting that 
general contractors have limited immunity as “statutory employers” under Texas 
Labor Code section 408.001(a)). But the precise contours of the Legislature’s 
power to grant immunity by statute remain unclear—it is no doubt limited by the 
Open Courts and Due Course of Law provisions of our Constitution. It may be 
constitutionally significant that both of the above examples involve special 
circumstances that limit the breadth of the immunity in question. In the first, 
the government is simply extending its own immunity to its employees (in a 
manner largely coterminous with governmental immunity for acts of government 
employees within their official capacity). See Franka, 332 S.W.3d at 371 n.9. 
In the second, a limited form of immunity is extended in conjunction with a 
comprehensive workers’ compensation scheme, one designed to provide an 
alternative form of compensation to the traditional tort remedies in some cases. 
That immunity, unlike sovereign immunity, does not entirely preclude a 
plaintiff’s recovery, it merely limits recovery to the 
statutory scheme. See HCBeck, 
Ltd. v. Rice, 284 S.W.3d 349, 350 (Tex. 2009). It is also an 
affirmative defense, not a bar to jurisdiction. See id. Furthermore, 
there is a question as to whether the Legislature can delegate to an agency the 
power to confer immunity upon separate private entities.
            
In sum, it is unsettled whether the Legislature has the power to confer 
immunity from suit on privately operated, open-enrollment charter schools via 
the statutory scheme in question. But, leaving aside that thorny issue, the only 
legislative act that addresses immunity for open-enrollment charter schools 
narrowly provides that they are “immune from liability to the same extent 
as a school district.” Tex. Educ. 
Code § 12.1056 (emphasis added). Immunity from liability is not the 
same as immunity from suit. Tooke, 197 S.W.3d at 
332. The former “bars enforcement of a judgment against a governmental 
entity,” id., while only the latter is the basis for a plea to the 
jurisdiction, see id.; Tex. Dep’t of Parks & Wildlife v. 
Miranda, 133 S.W.3d 217, 225–26 (Tex. 2004). The plain meaning of section 
12.1056 therefore gives no indication that LTTS is immune from suit, independent 
of whether it is immune from liability, and as such provides no basis for a plea 
to the jurisdiction. In other words, regardless of whether the Legislature has 
the power to confer immunity from suit in this case, section 12.1056 does not 
suffice to do so, making it anything but a foregone conclusion that privately 
operated, open-enrollment charter schools have immunity from suit.
            
Despite these unsettled questions, the Court’s reasoning will strongly 
imply to our state’s lower courts that we have already determined that privately 
run, open-enrollment charter schools are immune from suit. Indeed, nearly 
all of the Court’s analysis would be more properly addressed to the merits of 
LTTS’s assertion of immunity, rather than the narrow procedural question that is 
actually before us. I fear that the Court’s approach will effectively deprive 
litigants of their day in court to properly contest whether privately run, 
open-enrollment charter schools in fact have immunity from suit. We should not 
predetermine this important decision now, but should wait until it is squarely 
presented to this Court, and we should decide it explicitly, not by 
implication.
            
IV. Conclusion
            
Because (1) the plain meaning of Civil Practice and Remedies Code section 
101.001(3) does not cover a privately run, open-enrollment charter school like 
LTTS, and (2) the Court has effectively resolved the underlying substance of 
whether such schools enjoy immunity from suit, rather than the procedural issue 
properly before us, I respectfully dissent, and would affirm the court of 
appeals’ holding that it lacked jurisdiction over this interlocutory 
appeal.
 
                                                                                    
______________________________
                                                                                    
Eva M. Guzman
                                                                                    
Justice
 
OPINION DELIVERED: June 17, 2011






[1] As 
relevant here, section 101.001(3) defines a “governmental unit” as:
 
(B) a 
political subdivision of this state, including any city, county, school 
district, junior college district, levee improvement district, drainage 
district, irrigation district, water improvement district, water control and 
improvement district, water control and preservation district, freshwater supply 
district, navigation district, conservation and reclamation district, soil 
conservation district, communication district, public health district, and river 
authority;
 . . . .
(D) any other institution, agency, or organ of government the 
status and authority of which are derived from the Constitution of Texas or from 
laws passed by the legislature under the constitution.
 
Tex. Civ. Prac. & Rem. Code 
§ 101.001(3)(B), (D).
 

[2] 
Chapter 12 of the Education Code provides that charters can be granted not only 
to private entities, but also to public institutions of higher learning, and 
other governmental entities. Tex. Educ. 
Code § 12.101(a)(1), (4).
 

[3] Junior 
college districts are by no means unique in this respect. Similarly, for 
example, water improvement districts derive their authority from local 
governments, not the Legislature, and, like junior colleges—but unlike charter 
schools—they are listed in section 101.001(3). See Tex. Water Code §§ 55.021–.053 (establishing rules and 
procedures by which local governments may create water improvement districts); 
Tex. Civ. Prac. & Rem. Code § 101.001(3)(B) (defining governmental unit as “a political subdivision 
of this state, including any . . . water improvement 
district”).

[4] 
School districts as a practical matter are almost entirely immune—the Tort 
Claims Act excludes them from its waiver “[e]xcept as to motor vehicles.” Tex. Civ. Prac. & Rem. Code 
§ 101.051; see also Hopkins v. Spring Indep. 
Sch. Dist., 736 S.W.2d 617, 619 (Tex. 1987) (holding school district immune 
from suit for injuries suffered by a student aboard a school bus, because the 
injuries did not result from the “operation” or “use” of the bus).
 

[5] 
Notably, although Education Code section 12.1053 makes subchapter B 
(covering competitive bidding on certain public works contracts) of Local 
Government Code Chapter 271 applicable to open-enrollment charter schools, it 
does not apply subchapter I (which includes the waiver provisions found in 
sections 271.151 and 271.152) to them. See Tex. Educ. Code § 12.1053.

[6] 
Significantly, we have also reserved the possibility that, having created 
sovereign immunity, the judiciary “may modify or abrogate such immunity by 
modifying the common law,” Reata, 197 S.W.3d at 
375, though we have cautioned that courts should not lightly set aside immunity, 
once recognized, as doing so “could become a ruse for avoiding the Legislature,” 
City of Galveston, 217 S.W.3d at 471.