

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-23-00275-CV

CITY OF SAN ANTONIO, APPELLANT

V.

PATRICIA DIAZ, APPELLEE

On Appeal from the 150th Judicial District Court
Bexar County, Texas
Trial Court No. 2022CI01368, Honorable Lisa K. Jarrett, Presiding

May 15, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, the City of San Antonio, brings this interlocutory appeal challenging the trial court's denial of its jurisdictional challenge to an employment discrimination lawsuit brought by Appellee, Patricia Diaz.[1]  We agree with the City, reverse the order of the trial court, and render judgment granting the City's plea to the jurisdiction.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

**Background**

Diaz began employment with the City's public works department-solid waste division in 1995. On September 1, 2020, two months before her 25-year work anniversary, Diaz received a letter from David Newman, the City's director of solid waste management. The letter stated that Diaz's "services are no longer needed as an Assistant Solid Waste Manager for the City of San Antonio effective immediately. We wish you the best in your future endeavors."

This adverse employment action by the City was predicated on events occurring a month earlier, on July 31, while Diaz was off work and at her mother's house. Although the parties present differing accounts of what happened, the undisputed facts are as follows: Eliuth Carreno, a trash collector and subordinate of Diaz's, left his work post and drove to Diaz's mother's house to assist Diaz in working on a furniture project. Carreno, who remained on the clock, was gone from work for ninety minutes to two hours while he moved material and painted a drawer. Diaz accepted Carreno's help without pay. Upon his return to work, Carreno encountered an angry Tarik Esquerra, the assistant solid waste manager on duty. Carreno told Esquerra where he had been; an investigation ensued.[2]

As an employee with supervisory responsibility, Diaz was subject to the City's administrative directives, including Directive 1.75, which addresses fraud, waste, and abuse. The directive defines abuse as "the exploitation of one's position with the City for

---

[2] The City issued a report of its investigation in late January 2021, finding that "The facts of the investigation support the original allegation; the complaint is founded." By this time, Diaz had already been terminated from employment for more than four months.

personal advantage," and defines fraud as "utilization of [one's] position for personal reasons or to secure an otherwise unavailable opportunity." Breaches of this policy may lead to disciplinary action, including termination.

On August 27, 2020, Diaz submitted a written statement claiming that Carreno volunteered to assist her, and that she informed him that while she appreciated the offer, he was not obliged to assist."[3] Diaz contends she was unaware Carreno was still on the clock during his visit. Carreno submitted two accounts of what occurred, only one of which was translated from Spanish.[4] In that English language translation, Carreno asserts that Diaz requested his assistance because she knew of his repair skills and recent home purchase. He said he "did not feel threatened by [Diaz] to help her, but she is my boss, so I needed to help her."

Following her termination, Diaz was succeeded by a man in his late 30s. After Diaz filed suit, the City filed a combined plea to the jurisdiction and traditional motion for summary judgment. After an opportunity for several rounds of briefing by the parties, the trial court denied the City's motion without explaining its reasons. This appeal followed.[5]

---

[3] The parties do not dispute that before Carreno's arrival at her mother's house, Diaz told Carreno's supervisor that Carreno would be involved in a "special project" that day.

[4] Diaz does not show that the City changed the content of Carreno's statements or had any role in pressuring Carreno to do so.

[5] This appeal was originally filed in the Fourth Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

**Standard**

In Texas, governmental immunity shields political subdivisions, including the City, from lawsuits unless there is express consent to be sued. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Waiver of governmental immunity generally requires action by our State's Legislature. *Id.*

The Texas Commission on Human Rights Act (TCHRA), found in chapter 21 of the Texas Labor Code, expressly waives immunity in certain instances, "but only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights Indep. Sch. Dist. v. Clark,* 544 S.W.3d 755, 770 & n.16 (Tex. 2018) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012)). When a governmental entity claims it is entitled to immunity, as the City does here, its challenge may be brought via a plea to the jurisdiction or another procedural vehicle, such as a motion for summary judgment. *Alamo Heights*, 544 S.W.3d at 770. In this case, the City's plea challenges the existence of facts necessary to the trial court's jurisdiction, so we move beyond the allegations in Diaz's pleadings and review the evidence in the same way that we would assess a traditional motion for summary judgment. *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 (Tex. 2022); *Alamo Heights*, 544 S.W.3d at 771.[6]

---

[6] In other words, "[T]o avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. In doing so, however, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Alamo Heights*, 544 S.W.3d at 771 (cleaned up).

**Analysis**

Sex and Age Discrimination (Issues 2 and 3)

The City asserts five issues on appeal. We begin with the second and third issues, wherein the City challenges the trial court's denial of its motion for summary judgment on Diaz's claims of sex discrimination (second issue) and age discrimination (third issue). The Texas Labor Code prohibits employers, including municipalities from terminating the employment of employees because of their sex or age. TEX. LAB. CODE ANN. §§ 21.051(1); 21.002(8)(D) (defining "[e]mployer" as including a "municipality").[7] When a plaintiff's employment discrimination lawsuit has not been fully tried on the merits, we evaluate her employment discrimination claims using the three-step burden-shifting analysis developed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972), and refined in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *see Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

The first two *McDonnell Douglas* steps require cursory discussion because they are not at issue in this appeal. Under the first step, "the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Garcia*, 372 S.W.3d at 634. If the plaintiff meets its initial burden, the analysis moves to the second step, requiring the employer to present evidence of a

---

[7] Texas law similarly prohibits employers from discriminating against an individual in retaliation for certain acts, including opposing a discriminatory practice and making a charge of discrimination. TEX. LAB. CODE ANN. § 21.055.

5

legitimate, nondiscriminatory reason for its employment decision. *Romo v. Tex. Dept. Transp.*, 48 S.W.3d 265, 270 (Tex. App.—San Antonio 2001, no pet.).[8]

If the defendant produces its evidence, a presumption of discrimination "drops out of the picture," and the analysis moves to the third step, where the plaintiff must "rebut" the employer's evidence by showing that the proffered reason was not credible and merely a pretext for discrimination. TEX. LAB. CODE ANN. § 21.125(a); *AutoZone, Inc. v. Reyes,* 272 S.W.3d 588, 592 (Tex. 2008). Pertinent to the current case is the City's stated reason for Diaz's termination, specifically, her breach of Administrative Directive 1.75 prohibiting exploitation of her supervisory role to enlist a subordinate's help with personal tasks. In her brief and during oral argument, Diaz clarified she is not arguing that the City conducted a flawed investigation. Indeed, for more than two decades, our Supreme Court has emphasized that employment at will "does not require an employer to be reasonable, or even careful, in making its termination decisions." *Tex. Farm Bureau Mut. Ins. Cos. v.*

---

[8] The defendant employer may satisfy its burden by "introducing evidence, which, *taken as true*, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original). We do not perform an assessment of the reason's believability at this stage, as the burden of persuasion remains with the plaintiff at all times. *Id., see also Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995); *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 222 (Tex. App.—San Antonio 1998, pet. denied). *But see Grice v. Alamo Cmty. Coll. Dist.,* No. 04-12-00524-CV, 2013 Tex. App. LEXIS 4999, at *11–12 (Tex. App.—San Antonio Apr. 24, 2013, no pet.) (mem. op.) (holding that within the context of a summary judgment motion, the employer defendant "must *conclusively* establish its legitimate, non-discriminatory reason for the employment action." (emphasis added) (citing *M.D. Anderson Hosp. & Tumor Institute v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam)).

Our examination of the per curiam decision in *Willrich,* upon which *Grice* relies, reveals no indication that our state Supreme Court intended to announce a rule of law that deviates from federal courts' handling of the employer's burden in employment discrimination summary judgments. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 263 (Tex. 2022) ("Adherence to precedent remains the touchstone of a neutral legal system that provides stability and reliability. Departures from precedent must be carefully considered and should be rare."). Moreover, to the extent that one panel of the Fourth Court intended to announce a substantive change in summary judgment practice, we note that principles of horizontal *stare decisis* require that we employ the court's earliest non-superseded decision on this question. *Id.* at 258; *see Shadow v. Cont'l Airlines, Inc.,* No. 04-02-00930-CV, 2003 Tex. App. LEXIS 8208, at *7 (Tex. App.—San Antonio Sep. 24, 2003, no pet.) (mem. op.) (affirming summary judgment in favor of employer post-*Willrich*, and holding that burden of proof remains with plaintiff).

6

*Sears*, 84 S.W.3d 604, 609 (Tex. 2002). "Management does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). Accordingly, when an employer makes a disciplinary decision based on the statements of witnesses, we do not concern ourselves whether such statements are truthful, but whether the employer reasonably believed them and acted on the information in good faith. *See Rodriguez v. City of Poteet,* No. 04-13-00274-CV, 2014 Tex. App. LEXIS 2136, at *13–14 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (citations omitted) (rejecting argument that credibility of witnesses interviewed by employer precluded summary judgment).[9]

Diaz argues that Newman's decision to terminate her employment for violating Directive 1.75 is an instance of disparate discipline. In other words, Diaz argues that Newman consistently treated her more harshly and less favorably than other differently-situated employees. To prove discrimination under this theory, "the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *AutoZone, Inc.*, 272 S.W.3d at 594 (cleaned up). Although precise equivalence in culpability between employees is not the ultimate question, our Supreme Court, following our federal counterparts, have held that a disparate discipline plaintiff must show "that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained." *Smith v. Wal–Mart Stores, Inc.*, 891 F.2d 1177, 1180 (5th Cir.1990) (bracket in original) (quoted *by Ysleta Independent School Dist. v. Monarrez,*

---

[9] To show that the City lacked good faith, Diaz was required to "present evidence that those in charge of making the termination decision did not believe [Carreno's] allegations, but instead used the allegations as a bad faith pretext to discriminate against" her. *City of Poteet*, 2014 Tex. App. LEXIS 2136, at *14–15 (cleaned up). The record contains no evidence that the City believed Carreno's statements to be false.

7

177 S.W.3d 915, 917–18 (Tex. 2005)). Employees who possess different work responsibilities, including those with different "supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical'" under this test. *AutoZone, Inc.*, 272 S.W.3d at 594 (cleaned up).

In support of her claim of disparate discipline, Diaz relies upon a comparison with six employees who were disciplined[10] for violations of various City policies. However, zero of these individuals were accused of violating Directive 1.75, or of using their position to obtain free labor from a subordinate employee. When viewed in a light most favorable to Diaz, the evidence does not permit any reasonable factfinder to conclude that the complained-of conduct or surrounding circumstances were of comparable seriousness for purposes of establishing discrimination based on disparate discipline. *See AutoZone, Inc.*, 272 S.W.3d at 594; *Monarrez*, 177 S.W.3d at 918; *Baker Hughes Oilfield Operations, Inc. v. Williams*, 360 S.W.3d 15, 27–29 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Because Diaz failed to carry her burden of raising a genuine issue of material fact regarding the falsity/pretext element, the trial court erred in refusing to grant the City's plea to the jurisdiction on Diaz's claims for age and sex discrimination. We sustain the City's second and third issues.

---

[10] One employee, who was suspended for sleeping in his vehicle during business hours, had a different supervisor, as did an employee who was demoted for patronizing a bar on City time. One supervisory-level employee was demoted for providing false information related to his employment application. Another employee was demoted for poor relations with co-workers. The violations of the other two employees are not supported in the record, though both were terminated from employment.

8

<u>Illegal Retaliation (Issue Four)</u>

In its fourth issue, the City argues that the trial court erred in refusing to grant the plea to the jurisdiction on Diaz's claims for employment retaliation. Chapter 21 of the Texas Labor Code prohibits employers from taking adverse action against an employee for engaging in certain protected activities. TEX. LAB. CODE ANN. § 21.055. "An employee engages in a protected activity by, among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC." *Alamo Heights,* 544 S.W.3d at 786. Relevant here, section 21.055 lists four protected activities by the employee: (1) opposing a discriminatory practice; (2) making or filing a charge of discrimination; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. TEX. LAB. CODE ANN. § 21.055.

Diaz's brief contends she engaged in protected activity by "her record of consistently and persistently objecting to the cussing, cursing, use of gender slurs and racial slurs in her workplace, as well as gesticulations of a sexual nature." To oppose discriminatory practices, Diaz must minimally alert the employer of the employee's reasonable belief that unlawful discrimination is at issue. *Tex. Dep't of Transp. v. Lara,* 625 S.W.3d 46, 59 (Tex. 2021); *Exxon Mobil Corp. v. Rincones,* 520 S.W.3d 572, 586 (Tex. 2017) ("protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." (cleaned up)).

Our review of the record reveals that Diaz's evidence of opposing discriminatory practices at the City is threadbare. Diaz's evidence certainly describes experiencing an

unwholesome, potentially hostile, working experience with co-workers.[11]  There is some evidence that she occasionally spoke out about working conditions, including telling workers that obscene language was not professional, complaining another employee had been preselected for a promotion, opposing being stalked by a supervisor, and complaining about pornographic magazines in her desk and obscene graffiti in the men's restroom.  The record, however, never indicates when these complaints were made during Diaz's tenure with the City or that they alleged illegal conduct.  *See Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) (noting "Title VII does not protect opposition to all forms of unscrupulous conduct"; rather it "protects only opposition to discrimination based on 'race, color, religion, sex, or national origin'" and holding complaints of unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy, without more, were not prohibited by Title VII and therefore opposition to those practices was not protected by Title VII); *Graves v. Komet,* 982 S.W.2d 551, 556 (Tex. App.—San Antonio 1998, no pet.) ("In order to state a retaliatory discharge claim, the opposition has to be to an unlawful employment practice.").

Because Diaz did not present evidence of her opposition to an illegal practice, she was unable to establish a prima facie case of retaliatory discrimination.  We conclude the trial court erred in denying the City's motion as it pertained to Diaz's claim of retaliatory discrimination.  We sustain the City's fourth issue.

---

[11] Diaz did not timely submit a charge of discrimination complaining of a hostile work environment.

Intentional Infliction of Emotional Distress and Defamation (Issue Five)

Via a fifth issue, the City argues that because it retains immunity, the court lacks subject matter jurisdiction over Diaz's causes of action for intentional infliction of emotional distress and defamation.[12]  On appeal, Diaz candidly concedes that the City is immune from suit for these intentional torts.  We agree.

As indicated above, the City, as a political subdivision of the State, is protected from suit due to governmental immunity except when it has been waived pursuant to the constitution or state law.  *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014).  The Texas Tort Claims Act, which provides a limited waiver of immunity, expressly excludes from its reach intentional torts, including the ones asserted by Diaz.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(b) (governmental immunity not waived for a claim arising out of any intentional tort); *Univ. of Tex. Med. Branch v. Hohman,* 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (compiling cases, and holding that defamation and intentional infliction of emotional distress are intentional torts).

Nevertheless, Diaz argues that she should receive a "name clearing hearing" given her discharge under the cloud of allegations about "fraud" and "theft."  Although her petition complains the City did not give her a hearing, Diaz did not include a court-ordered name-clearing hearing among the relief she sought.[13]  As the trial court could not have

---

[12] Although this issue was not raised in the trial court, it may be asserted for the first time on appeal because it implicates the Court's subject matter jurisdiction.  *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91, 94 (Tex. 2012).

[13] Diaz pleaded for the following relief: rehiring, reinstatement to the same position and pay grade, reinstatement of benefits, damages for lost wages, damages for injury to her name and reputation, "[n]on-compensatory damages, including mental anguish, and "[s]uch other relief as the Court may deem just and equitable."

11

ordered relief in the absence of pleadings, we decline to order such relief here.  *See* TEX. R. CIV. P. 301.[14]  We sustain the City's fifth issue.

## Conclusion

We reverse and render an order dismissing Diaz's claims against the City of San Antonio for want of subject matter jurisdiction.  Diaz's pending *Motion to Supplement Clerk's Record*, which we have carried with the case, is denied as moot.

Lawrence M. Doss
Justice

---

[14] *See also Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex. 1983) ("a party may not be granted relief in the absence of pleadings to support that relief."); *Rahmani v. Sadeghian*, No. 05-22-00759-CV, 2024 Tex. App. LEXIS 1763, at *9 (Tex. App.—Dallas Mar. 11, 2024, no pet.) (mem. op.) ("A trial court has no authority to grant relief not requested by the parties.").