**Affirmed, Motion for Rehearing Denied, Opinion Withdrawn and Substitute Memorandum Opinion filed December 18, 2025.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-24-00108-CV

---

### REGINA CARSON, Appellant

### V.

### BLUE CROSS BLUE SHIELD OF TEXAS, INC., A DIVISION OF HEALTH CARE SERVICE CORPORATION, ANITA C. JOHNSON, YVONNE STERNADEL A/K/A VONNIE S., LAURA M. MCCLELLAND, LAUREN COLLINS REESER, JANE CORDRAY, JASON RAMIREZ, JENNIFER TRACEY, CHRISTOPHER FLINN, AND TEACHER RETIREMENT SYSTEM OF TEXAS, Appellees

---

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-23-02212-E**

---

### SUBSTITUTE MEMORANDUM OPINION

We deny Regina Carson's motion for rehearing, withdraw our prior opinion dated August 29, 2025, and substitute the following opinion of the Court.

Appellant Regina Carson appeals the trial court's order granting pleas to the

jurisdiction filed by Appellees Teacher Retirement System of Texas (TRS), Blue Cross Blue Shield of Texas (BCBSTX), and Anita C. Johnson, Yvonne Sternadel, Laura M. McClelland, Lauren Collins Reeser, Jane Cordray, Jason Ramirez, and Jennifer Tracey (collectively, the Individual Defendants). In three issues Carson challenges the trial court's orders alleging the trial court (1) abused its discretion in refusing to compel Appellees to produce the contract between TRS and BCBSTX; (2) erred in granting BCBSTX's plea to the jurisdiction without considering the contract; and (3) erred in granting TRS's plea to the jurisdiction without considering the contract and Carson's entitlement to judicial review of her claim.

Reviewing the jurisdictional allegations, taking them as true, and construing them in favor of Carson, we conclude that Carson's petition does not present a claim for which sovereign immunity is waived, and affirm the trial court's orders granting the pleas to the jurisdiction.

**BACKGROUND**

## I. The Allegations

Carson, a public school teacher, scheduled mastopexy surgery in March 2021. Carson was insured through the public school system under the TRS ActiveCare Plan (the Plan), which is administered by BCBSTX. The Plan is funded exclusively by the Texas School Employees Uniform Group Coverage Trust Fund, which is a trust established by the State. *See* Tex. Ins. Code §§ 1579.051, .251–.303. Carson's chosen in-network surgeon was not authorized by BCBSTX until the day after Carson's surgery was scheduled. As a result Carson was unable to reschedule with the in-network surgeon and chose another out-of-network surgeon who required an upfront payment of $45,800 and would not submit an insurance claim on Carson's behalf.

2

Carson began the process of obtaining pre-approval of the out-of-network surgeon, communicating with the BCBSTX employees whom she later named as Individual Defendants. Carson's pleading acknowledged that the second surgeon was considered out of network and that a BCBSTX employee had informed her that the surgery would not be covered at the same level as an in-network surgeon. Carson alleged she obtained pre-authorization and proceeded with surgery. When Carson submitted her claim, she alleged it was "returned/rejected." Carson contacted BCBSTX and was advised by an individual she identified as "Lori"[1] to resubmit the claim with certain medical codes. After communicating with several BCBSTX employees, Carson's claim was denied, and she submitted an appeal. Carson alleged she eventually learned that her appeal had been denied. TRS and BCBSTX dispute Carson's assertion that her claim was denied. In initial disclosures served on Carson, BCBSTX averred that it "paid benefits in accordance with [Carson]'s health benefits plan based on the services performed by an out-of-network provider."

Carson subsequently filed suit against TRS, BCBSTX, and the Individual Defendants asserting claims against BCBSTX and the Individual Defendants for negligent misrepresentation, violations of the Insurance Code and Deceptive Trade Practices Act, and estoppel. Carson also asserted a claim for declaratory relief against TRS and BCBSTX under the Uniform Declaratory Judgments Act (UDJA). Carson sought damages in addition to attorney's fees on her declaratory-judgment claim. All of Carson's claims concern the handling of her insurance claim for the 2021 surgery.

## II. Pleas to the Jurisdiction

TRS filed a plea to the jurisdiction in which it alleged Carson failed to plead

---

[1] Carson alleged that "Lori" was either Appellee Lauren Collins Reeser or Appellee Laura M. McClelland.

any facts that demonstrate a waiver of sovereign immunity. TRS alleged that Carson did not plead any waiver of immunity that would permit her declaratory-judgment claims to proceed. BCBSTX and the Individual Defendants filed a plea to the jurisdiction in which they asserted derivative sovereign immunity.

Carson responded asserting that BCBSTX and the Individual Defendants were not protected by sovereign immunity because BCBSTX acted independently of TRS, exercising discretion in determining whether claims would be paid, and was not merely an administrator of the TRS Plan. Carson relied on the Benefits Booklets BCBSTX attached to its plea and argued that the booklets reflected BCBSTX exercised independent discretion to operate, control, and create the Plan.

Carson asserted TRS was not protected by sovereign immunity because the UDJA and the Administrative Procedure Act (APA) waived TRS's sovereign immunity. Specifically, Carson argued she was not seeking damages from TRS, and Section 37.004(a) of the UDJA waived TRS's immunity regarding Carson's rights and remedies associated with the contract or agreement between TRS and BCBSTX. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). Carson further asserted she was entitled to judicial review pursuant to Section 2001.171 of the APA because TRS is a state agency, and the denial of her claims constituted an appealable final decision. *See* Tex. Gov't Code § 2001.171.

Finally, Carson argued the trial court should not decide the pleas to the jurisdiction without first reviewing the contract between TRS and BCBSTX.

## III. Motion to Compel

In the meantime, Carson filed a motion to compel discovery from TRS of, among other things, the contract between TRS and BCBSTX "relating to the handling, adjusting, determining, paying, rejecting, and deciding claims for those

4

submitted by Plaintiff which are the subject of this lawsuit." At a hearing on the motion to compel Carson argued that discovery of the contract between the parties was necessary to inform the jurisdictional issue. Carson argued that the evidence attached to the parties' jurisdictional pleas was insufficient to determine whether BCBSTX was entitled to derivative sovereign immunity as the Plan administrator.

TRS stated it would be amenable to producing the contract with a sufficient protective order in place to protect confidential information. Carson responded asking the court to compel TRS to "produce the contract under a confidentiality order . . . . Otherwise, the Court can decide both motions as they are." The trial court concluded the hearing by granting leave for TRS and BCBSTX to file replies to Carson's response to the jurisdictional pleas and encouraging the parties to confer and agree on production of a redacted contract. The trial court did not rule on Carson's motion to compel.

The trial court subsequently granted both pleas to the jurisdiction and dismissed Carson's claims with prejudice. This appeal followed.

ANALYSIS

In three issues Carson asserts the trial court (1) abused its discretion in refusing to compel Appellees to produce the contract between TRS and BCBSTX; (2) erred in granting BCBSTX's and the Individual Defendants' pleas to the jurisdiction; and (3) erred in granting TRS's plea to the jurisdiction.

## I.      Standard of Review

Whether a trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction can take two forms: (1) a challenge to the sufficiency of the plaintiff's pleadings regarding the allegations of jurisdictional

5

facts, or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Thus, the plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–27. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

When "the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Alamo Heights*, 544 S.W.3d at 770–71. When a "jurisdictional challenge implicates the merits of the [plaintiff's] cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Miranda,* 133 S.W.3d at 227. In other words, in those circumstances, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. *Garcia*, 372 S.W.3d at 635. If the defendant meets that burden, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue. *Id*. The evidence is

reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. at 228.

## II.    Sovereign Immunity

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State, its agencies, and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006). The State's political subdivisions, which include agencies such as TRS, are afforded the same immunity protections as the State. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008).

Sovereign immunity embraces two concepts: immunity from suit and immunity from liability. *Reata*, 197 S.W.3d at 374; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Sovereign immunity deprives a trial court of subject matter jurisdiction for actions in which certain governmental units have been sued unless the unit has expressly consented to suit. *Reata*, 197 S.W.3d at 374; *Miranda*, 133 S.W.3d at 224; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). Because immunity from suit defeats a trial court's subject matter jurisdiction, it is properly raised in a plea to the jurisdiction. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022). In this case TRS, BCBSTX, and the Individual Defendants asserted immunity from suit.

By challenging a governmental unit's assertion of immunity, a plaintiff

7

generally overcomes a governmental unit's immunity defense by demonstrating that the Legislature has clearly and unambiguously waived immunity. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023). Without such a waiver, the trial court lacks subject matter jurisdiction to proceed, and the causes of action alleged against the governmental unit are barred. *Id.* Accordingly, the trial court must dismiss the suit if the plaintiff cannot satisfy the burden of affirmatively demonstrating the trial court's subject matter jurisdiction to hear and decide the case by showing that the causes of action asserted by the plaintiff fall within a statutory waiver of immunity. *Id.*

Sovereign immunity may also apply and extend to protect private companies who contract with the State or other governmental entities under certain circumstances. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 124 (Tex. 2015); *see Foster v. Tchr. Ret. Sys.*, 273 S.W.3d 883, 889–90 (Tex. App.—Austin 2008, no pet.) (extending immunity to Aetna for claims that arose from the denial of health coverage based on the relationship between the state agency and Aetna, who was the administrator of the state agency's health plan). Thus, under the principle of derivative sovereign immunity, a private company that acts on behalf of a governmental entity may be protected from liability and suit unless (1) the Legislature has expressly and unambiguously waived, as to a plaintiff's asserted causes of action, the immunity of the governmental entity that the private company has contracted with or (2) the private company's actions on behalf of a governmental entity do not support an extension of immunity. *See Olivares*, 461 S.W.3d at 124–28 (discussing extension of sovereign immunity to private parties); *Foster*, 273 S.W.3d at 889–90; *see also Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). In this case, the parties do not argue an express waiver by the Legislature; Carson asserts BCBSTX's actions on behalf of TRS do not

8

support an extension of immunity to BCBSTX and its employees. With those principles in mind, we address Carson's issues on appeal.

### III. Carson did not Preserve Error on the Issue of Production of the Agreement Between TRS and BCBSTX.

In Carson's first issue she asserts the trial court abused its discretion in failing to grant her motion to compel production because (1) TRS's use of general objections are no objections at all; (2) TRS presented no evidence to support its objections; (3) TRS did not seek a protective order; (4) TRS admitted the requests were relevant to jurisdiction; and (5) the requests included agreements and contracts between TRS and BCBSTX that are relevant to the question of jurisdiction.

In the trial court Carson sought production of several documents from TRS including:

> A true and correct copy of any contract, agreement, or understanding between BCBS and TRS relating to the handling, adjusting, determining, paying, rejecting, and deciding claims for those submitted by Plaintiff which are the subject of this lawsuit.

When TRS did not produce certain documents, including the contract between BCBSTX and TRS, Carson moved to compel TRS to produce the requested documents.

The trial court held a hearing on Carson's motion to compel but did not rule on the motion. In response to TRS's request for confidentiality in certain matters, Carson asked the court to compel TRS to produce the contract under a confidentiality order, or "decide both motions as they are." The trial court encouraged the parties to cooperate in reaching an agreed protective order, but did not rule on the motion to compel.

Contrary to Carson's arguments on appeal, the trial court did not grant or deny

the motion to compel production of the documents. After the hearing on the motion to compel, the parties engaged in a protracted letter writing campaign in which they demonstrated their efforts and eventual unsuccess in agreeing on a protective order that would have allowed production of the contract. Carson did not pursue a ruling on the motion to compel or object to the trial court's failure to rule.

To preserve error on a discovery dispute, the complaining party must obtain a ruling from the trial court on the discovery matter. *Gespa Nicar., S.A. v. Recom AG*, 705 S.W.3d 362, 380 (Tex. App.—El Paso 2024, pet. denied); *Peters v. Volkswagen Group of Am., Inc.*, No. 01-21-00634-CV, 2023 WL 5436383, at *3 (Tex. App.—Houston [1st Dist.] Aug. 24, 2023, pet. denied) (mem. op.). To preserve a complaint on appeal, Rule 33.1 of the Rules of Appellate Procedure requires the record to show that a specific complaint was made to the trial court by a timely request, objection, or motion, and that the trial court ruled on that request, objection, or motion. Tex. R. App. P. 33.1(a).

Because Carson did not secure a ruling on her motion to compel, she failed to preserve error for appeal. *See* Tex. R. Civ. P. 215.1(b); *In re Marriage of Bivins*, 393 S.W.3d 893, 902 (Tex. App.—Waco 2012, pet. denied) ("Where there are objections to discovery, the party seeking discovery can either file a Motion to Compel or seek a ruling on [the] objections."); *see also Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) ("The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal."). We overrule Carson's first issue.

## IV. The Trial Court did not Err in Granting TRS's Plea to the Jurisdiction.

In Carson's second issue she challenges the trial court's ruling on the pleas to the jurisdiction filed by TRS, BCBSTX, and the Individual Defendants. We address each defendant in turn beginning with TRS.

TRS filed a plea to the jurisdiction in which it alleged Carson failed to plead

any facts that demonstrate waiver of sovereign immunity and would be unable to plead facts to demonstrate jurisdiction over TRS if given the opportunity to replead. TRS as a state agency is a public entity entitled to sovereign immunity. *See* Tex. Gov't Code § 821.003; *Foster*, 273 S.W.3d at 887. Immunity from suit bars a suit against TRS, a state agency, unless the Legislature expressly consents to the suit. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Carson argues she established a waiver of immunity through the UDJA and the APA.

A.      **Declaratory Judgment Claim**

Carson first argues that TRS's immunity was waived under the UDJA, which permits a plaintiff to seek "relief regarding interpretation or application of a statute, ordinance, or contract." *See* Tex. Civ. Prac. & Rem. Code § 37.004 ("A person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."). Carson asserted a claim against TRS for declaratory judgment seeking declarations that, among other things, her insurance claim was covered and should have been paid by the Plan. Carson bore the burden to plead facts that affirmatively demonstrated a valid waiver of immunity. *See Matzen v. McLane*, 659 S.W.3d 381, 394 (Tex. 2021). The UDJA, however, "does not contain a general waiver of sovereign immunity; it provides only a limited waiver for challenges to the *validity* of an ordinance or statute." *Morath v. Kingsville Indep. Sch. Dist.*, 710 S.W.3d 918, 929 (Tex. App.— Dist. 2025, no pet.) (internal quotations omitted). "Claims for 'other types of declaratory relief are barred absent a legislative waiver of immunity with respect to the underlying action.'" *State v. Zurawski*, 690 S.W.3d 644, 660–61 (Tex. 2024)

11

(quoting *Town of Shady Shores*, 590 S.W.3d at 553). Carson does not challenge the validity of a statute or ordinance, but asserts TRS erred in denying her insurance claim. Accordingly, her pleading under the UDJA is insufficient to waive immunity.

## B.    Administrative Procedure Act

Next, Carson asserts TRS's immunity was waived by the APA. *See* Tex. Gov't Code § 2001.171. The APA provides that "[a] person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." *Id*. A contested case is a proceeding "in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." *Id*. § 2001.003(1). The APA creates a right to judicial review for those who satisfy the statute's threshold requirements, but does not create an inherent right to judicial review. *See Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 172, 196 (Tex. 2004). The APA provides "a limited waiver of sovereign immunity" in suits for judicial review if certain statutory prerequisites to suit are satisfied. *Id*. at 198.

Generally, if the Legislature assigns exclusive or original jurisdiction to an administrative body, then no right to judicial review exists. *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist. by & through Crigler*, 694 S.W.3d 752, 757–58 (Tex. 2024). In those circumstances, a right to judicial review only exists if "a statute provides a right" or "the order adversely affects a vested property right or otherwise violates a constitutional right." *Id.* (quoting *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000)). Moreover, even if a statute provides a right to judicial review, the court only acquires jurisdiction when the claimant exhausts all administrative remedies under the statute. *Id.* A statutory prerequisite to suit is jurisdictional. Tex. Gov't Code § 311.034.

The APA provides a waiver of immunity as to suits for judicial review from "a final decision in a contested case." Tex. Gov't Code § 2001.171. Relying on the Texas Administrative Code, Carson asserts the APA provides an independent avenue for judicial review of her insurance claim. *See* 34 Tex. Admin. Code § 41.50. Therefore, assuming without deciding that the APA otherwise applies to a decision under Section 41.50 of the Administrative Code, to establish a waiver of sovereign immunity under the APA, Carson must show that all internal agency review procedures have been exhausted and that a contested case hearing has been held. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006) (when an administrative body has exclusive jurisdiction to make the initial determination in a dispute, a party must exhaust all administrative remedies before seeking judicial review of the decision).

Carson, however, did not assert a claim under the APA in her live pleading in the trial court. The only claim Carson asserted against TRS was for declaratory judgment. Carson did not raise the APA as a waiver of sovereign immunity until her response to TRS's plea to the jurisdiction. Carson's petition, not her response to the plea to the jurisdiction, defined the issues before the trial court in reviewing whether sovereign immunity applied. *See Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982) ("The office of pleadings is to define the issues at trial."). As the claimant, Carson bears the burden of pleading facts affirmatively demonstrating that a waiver of sovereign immunity applies. *See Matzen*, 659 S.W.3d at 388–89.

Carson asserted for the first time in response to the plea to the jurisdiction, that TRS falls within the scope of the APA's waiver of immunity because TRS is a state agency that has exclusive jurisdiction to review the denials of TRS-ActiveCare claims, and the denial of her claims was a final decision under the APA. However, Carson's live pleading does not assert a claim for judicial review under the APA. Carson failed to plead facts that affirmatively demonstrate that the waiver or

13

exception of judicial review under the APA apply. *See Miranda*, 133 S.W.3d at 226 (requiring plaintiff's pleadings to affirmatively demonstrate that sovereign immunity either does not apply or has been waived).

## V. The Trial Court did not Err in Granting BCBSTX's Plea to the Jurisdiction.

Carson asserts the trial court erred in granting the plea to the jurisdiction filed by BCBSTX because (1) evidence attached to the plea is inadmissible; and (2) BCBSTX is an independent and private contractor.

As the administrator of TRS's Plan, BCBSTX asserts it is also immune under the principle of derivative sovereign immunity. A private company, such as BCBSTX, operating as a third-party administrator to an insurance program that is funded by the State, such as TRS, is entitled to sovereign immunity like the governmental entity for which it contracts. *Bellamy v. Allegiance Benefit Plan Mgmt., Inc.*, 696 S.W.3d 751, 767–68 (Tex. App.—Eastland 2024, no pet.) (holding Allegiance was entitled to derivative immunity as the plan administrator for a City run insurance plan); *see also Foster*, 273 S.W.3d at 885–90 (extending immunity to Aetna as a third-party administrator of a TRS plan); *see also McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*, No. 7:14-CV-913, 2015 WL 9257154, at *8 (S.D. Tex. Dec. 14, 2015) (extending immunity to the third-party administrator of the Employees Retirement System of Texas's (ERS) health insurance plan because final decisions on benefit payments rested with ERS). Courts have held that the governmental unit's immunity protections extend to, and may be asserted by, the third-party administrator that is retained to supervise the unit's insurance plan. *Id.* A third-party administrator's entitlement to immunity is derived from the governmental unit's assertion of immunity. *Bellamy*, 696 S.W.3d at 764.

The facts and analysis in this case are similar to those in *Foster*. In *Foster*, a

retired teacher sued TRS and Aetna, a private company retained by TRS to act in the capacity as the administer of TRS's insurance plan, for breach of contract, breach of the duty of good faith and fair dealing, violations of the Insurance Code, and violations of the Deceptive Trade Practices Act, after Aetna denied the retired teacher's claim for health benefits. *See Foster*, 273 S.W.3d at 885, 889. The Third Court of Appeals concluded that the Legislature had not waived TRS's immunity from the retired teacher's suit. *Id*. at 887. The court, in considering whether Aetna, as a private entity, was entitled to derivative sovereign immunity, held that Aetna was immune from suit because "Aetna simply provide[d] administrative services to facilitate the provision of health care to [covered] retirees." *Id*. at 888–90.

In concluding that Aetna had derivative immunity as a third-party plan administrator, the court in *Foster* relied on evidence that the insurance plan was fully funded by the state such that Aetna had no stake in a claim's approval or denial, TRS set the terms of the plan, Aetna acted as an agent of and in a fiduciary capacity for TRS, and TRS agreed to indemnify Aetna for any obligations arising out of its good-faith performance. *Id*.; *see also Olivares*, 461 S.W.3d at 127 (discussing *Foster*). Additionally, the *Foster* court stated that "[t]o hold otherwise would implicate State funds and expose Aetna to liability from which its principal is protected and, more importantly, would undercut the public policy that favors allowing the State to contract with private entities to more efficiently provide services to government employees." *Foster*, 273 S.W.3d at 890.

In determining whether BCBSTX is entitled to derivative sovereign immunity, we look to Carson's pleadings for facts that affirmatively demonstrate the trial court's jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). In Carson's pleadings, she asserted multiple claims against BCBSTX and the Individual Defendants, all of which arise from the denial of her

healthcare claim she alleges should have been covered by the TRS Plan. Carson alleged that the Plan was not administered or overseen by TRS, or, in the alternative, that BCBSTX is a plan administrator with full authority to decide claims and coverage.

In support of its jurisdictional plea BCBSTX attached the declaration of Steve K. Alexander, a senior account executive, and benefits booklets describing benefits offered by the TRS Plan. Alexander averred that Carson was a beneficiary of the TRS Plan and that the booklets addressed benefits available to her in 2021 when her surgery was performed. Alexander confirmed that the benefits booklets stated that BCBSTX was not the insurer, but merely a claims administrator and that TRS was ultimately responsible for paying benefits under the Plan. Alexander further averred that the Individual Defendants were acting in the scope of their employment in communicating with Carson regarding her claim.

In response, Carson asserted that BCBSTX was not entitled to derivative sovereign immunity because it is a private entity that exercises independent discretion regarding the TRS Plan. Carson did not attach evidence to her response. Carson attempts to distinguish *Foster* and other authority relied on by BCBSTX by arguing that BCBSTX was not a third-party administrator of the Plan. Because both parties challenged jurisdictional facts in the trial court, we examine the jurisdictional facts and evidence to determine whether BCBSTX is entitled to derivative sovereign immunity. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("[B]ecause a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case.").

The question that we must address on this point is whether the facts and allegations recited in Carson's pleadings, when taken as true and construed liberally

16

in her favor, necessarily demonstrate that BCBSTX, as the Plan administrator, is shielded and protected from suit by TRS's sovereign immunity like the third-party administrator was in *Foster*. *See Foster*, 273 S.W.3d at 888–90.

The record before us shows that (1) BCBSTX "assumed only the authority and discretion as given by the employer to interpret the plan provisions and benefit determinations"; (2) BCBSTX and TRS entered into an Administrative Services Agreement; and (3) BCBSTX, in its role as Claims Administrator, did not "assume any financial risk or obligation with respect to claims." Any recovery Carson may be entitled to would be paid from the State treasury by TRS; it would not be paid by the private entity, BCBSTX.

We conclude that the evidence attached to BCBSTX's jurisdictional plea establishes BCBSTX as the third-party administrator of the TRS Plan. BCBSTX's role and authority in administering the Plan is analogous to and consistent with circumstances where courts have extended the protections of sovereign immunity to a private entity who acts in the capacity as an administrator for a governmental unit. *See Stegall v. TML Multistate Intergovernmental Emp. Benefits Pool, Inc.*, No. 05-18-00239-CV, 2019 WL 4855226, at *5 (Tex. App.—Dallas Oct. 2, 2019, no pet.) (mem. op.) (extending immunity to UMR, Inc. as an administrator for the TML Multistate Intergovernmental Employee Benefits Pool's intergovernmental self-insurance risk pool); *United Healthcare Choice Plus Plan for City of Austin Emps. v. Lesniak*, No. 03-15-00309-CV, 2015 WL 7951630, at *2–3 (Tex. App.—Austin Dec. 1, 2015, pet. denied) (mem. op.) (extending immunity to United HealthCare Services as an administrator of the City's self-funded health plan); *Foster*, 273 S.W.3d at 889–90. Thus, because BCBSTX is a third-party administrator of TRS's Plan, we conclude that BCBSTX is afforded the same protections of sovereign immunity that TRS enjoys and is immune from the suit and claims that Carson has

17

asserted against it. *See Foster*, 273 S.W.3d at 890.

Carson presents two arguments asserting BCBSTX is not entitled to derivative sovereign immunity. Carson argues that (1) Alexander's declaration is not admissible; and (2) BCBSTX failed to produce its agreement with TRS. We address each challenge in turn.

## A. Admissibility of Declaration

First, Carson argues Alexander's declaration is inadmissible because it uses the term, "to the best of my knowledge." Carson concedes she did not object to the declaration in the trial court, but argues this is a substantive defect that cannot be waived by failure to object. Carson further argues that Alexander's declaration contains several conclusory statements concerning whether the Individual Defendants acted within the scope of their employment. Finally, Carson challenges Alexander's authentication of the benefits booklets attached to BCBSTX's plea.

When reviewing objections to affidavits or declarations, we apply different preservation rules to defects in the form and the substance of an affidavit or declaration. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (per curiam) (holding that in the context of summary judgment affidavits a defect in "form" cannot provide grounds for reversal unless the party timely objects and obtains a ruling). Defects in substance are "those that leave the evidence legally insufficient" and may be raised for the first time on appeal despite party's failure to object or the trial court's failure to rule on the objections. *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.). A defect in form of an affidavit must be objected to in the trial court, and the failure to obtain a ruling waives the objection on appeal. *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022).

Complaints that a declarant was not testifying to personal knowledge or was not competent to testify are objections to defects in form and are therefore waived for failure to object or to obtain a ruling. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990). Similarly, a defect in a declaration or affidavit attempting to authenticate an attached document is waived by failure to object in the trial court. *Medic Pharmacy, LLC v. AVK Properties, LLC*, No. 01-21-00447-CV, 2022 WL 2347923, at *6 (Tex. App.—Houston [1st Dist.] June 30, 2022, no pet.) (mem. op.). Carson's objections to defects of form, raised for the first time on appeal, are therefore waived. *See* Tex. R. App. P. 33.1(a); *Seim*, 551 S.W.3d at 164.

An objection that an affidavit is conclusory, however, raises a defect of substance, which can be raised for the first time on appeal. *Nationwide Coin & Bullion Reserve, Inc. v. Thomas*, 625 S.W.3d 498, 504 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). A conclusory statement is one that expresses a factual inference without providing underlying facts to support that conclusion. *See Arkoma Basin Expl. Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008).

Alexander's declaration is not conclusory and therefore can be considered as evidence to support the trial court's jurisdictional ruling. Appellant contends that Alexander's statements about the Individual Defendants acting within the scope of their employment is conclusory. Alexander stated in his declaration that his statements were based on personal review of documents and data, which provide sufficient foundation for his declaration that the Individual Defendants were within the scope of their employment. *See id.* (citing Black's Law Dictionary definition of "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based.").

**B.    Production of the Agreement**

As to production of the agreement between BCBSTX and TRS we addressed Carson's attempts to obtain the agreement in discovery in Section III above. It is undisputed that Carson did not offer the agreement and that it was her burden to present evidence in support of jurisdiction. *See Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's subject-matter jurisdiction).

Citing authority from federal district courts Carson argues that by failing to make the agreement part of its evidentiary proof, BCBSTX failed to meet its burden to establish derivative immunity. *See ER Addison LLC*, 2024 WL 3513466, at *8; *Piney Woods*, 2022 WL 4004790, at *12; *contra Kirby v. Health Care Serv. Corp.*, 88 F. Supp. 3d 717, 721, 723 (W.D. Tex. 2015) (dismissing TRS claims against BCBSTX). Carson's assertion runs counter to the "foundational rule" in all sovereign immunity cases that the plaintiff "bears the burden of affirmatively showing waiver of immunity." *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024) (quoting *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022)). Carson did not produce the agreement or pursue a ruling on her motion to compel the agreement.

Addressing the authority raised by Carson, not only are we not bound by those decisions,[2] they depended on review of the contracts between the entities, which Carson has not produced. In *ER Addison*, the district court reviewed the contract between emergency centers and BCBSTX and rejected BCBSTX's claim of immunity because an indemnity clause in the agreement reflected that TRS would

---

[2] *See In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189–90 (Tex. 2009) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court.").

not be responsible for BCBSTX's debts and obligations. *ER Addison*, 2024 WL 3513466, at *8. In *Piney Woods*, the district court declined to review BCBSTX's claim of immunity without reviewing the contract. *Piney Woods*, 2022 WL 4004790, at *12. We conclude the trial court did not err in granting BCBSTX's plea to the jurisdiction.

## VI. The Trial Court did not Err in Granting the Individual Defendants' Plea to the Jurisdiction.

Carson asserted claims against the Individual Defendants for negligent misrepresentation, violations of the Insurance Code and Deceptive Trade Practices Act, and estoppel. With the exception of her claim under the UDJA, Carson did not distinguish between conduct attributable to the Individual Defendants and to BCBSTX, referring to the employees and BCBSTX collectively as "the BCBS Defendants." In their plea to the jurisdiction the Individual Defendants asserted they were entitled to sovereign immunity because they were acting in the scope of their employment with BCBSTX. We agree.

A suit against state officials in their official capacity is not a suit against the officials personally, for the real party in interest is the entity. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007). The employees sued in their official capacity enjoy the same derivative sovereign immunity as BCBSTX. *Id*. Carson's petition does not specify whether the Individual Defendants were sued in their official capacities, but Carson's allegations against the Individual Defendants arise from their employment with BCBSTX. Generally, when a plaintiff sues government officials and employees, but does not indicate whether the employees are sued in their official or individual capacity, they are sued in their official capacity. *See Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011) (suit against government officers is in effect suit against state itself); *Garcia*, 253

S.W.3d at 657 (plaintiff must decide at outset whether governmental employee acted independently and is solely liable, or if he acted within general scope of his or her employment such that governmental unit is vicariously liable); Tex. Civ. Prac. & Rem. Code § 101.106(f) ("If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment . . . the suit is considered to be against the employee in the employee's official capacity only.").

Carson does not dispute that the Individual Defendants were sued in any other capacity than their official capacity. Instead, she asserts the Individual Defendants are not immune because they engaged in *ultra vires* conduct. To fall within this *ultra vires* exception, a suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009); *see also Hall v. McRaven*, 508 S.W.3d 232, 240–41 (Tex. 2017). "[A]ctions taken 'without legal authority' ha[ve] two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *McRaven*, 508 S.W.3d at 239.

Each of Carson's claims against the Individual Defendants is rooted in the alleged denial of her insurance claim. Carson has not alleged that the Individual Defendants were acting without legal authority or failing to perform a purely ministerial act. Moreover, *ultra vires* claims may only seek prospective injunctive remedies. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019). If an injury has already happened and the only plausible remedy is monetary damages, an *ultra vires* claim will not lie. *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). Carson has not asserted a valid *ultra vires* claim for prospective injunctive relief against the Individual

Defendants. The Individual Defendants, therefore, enjoy the same derivative sovereign immunity as BCBSTX. *See Koseoglu*, 233 S.W.3d at 844; *Foster*, 273 S.W.3d at 890. The trial court did not err in granting the Individual Defendants' plea to the jurisdiction.

Having concluded the trial court did not err in granting the pleas to the jurisdiction filed by TRS, BCBSTX, and the Individual Defendants, we overrule Carson's second and third issues.

## VII. The Trial Court did not Err in Ordering Dismissal with Prejudice.

In Carson's third issue, she asserts that the trial court erred in dismissing her claims with prejudice to refiling and asks this court to modify the trial court's dismissal order to reflect that dismissal is without prejudice, which would allow Carson the opportunity to replead. Specifically, Carson requests the opportunity to file an amended petition "with declaratory claims to clarify TRS's authority including assigning some or all of its duties and obligations to BCBSTX by contract, as well as claims related to statutory and policy interpretation under Chapter 1579 of the Texas Insurance Code, 34 Tex. Admin. Code § 41.50, and Section 2001.171." Carson further argues she should be entitled to replead to continue her efforts to obtain the agreement between TRS and BCBSTX.

When upholding a plea to the jurisdiction on sovereign immunity grounds, we give the plaintiff an opportunity to replead if the defect can be cured. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011). When a plaintiff fails to plead facts sufficient to overcome sovereign immunity, courts generally should afford the plaintiff the opportunity to replead unless the pleadings affirmatively negate the existence of jurisdiction. *Fraley v. Tex. A & M Univ. Sys.*, 664 S.W.3d 91, 101 (Tex. 2023). But when a governmental entity asserts immunity and the plaintiff fails to allege or show facts demonstrating a waiver of immunity after having a reasonable

23

opportunity to conduct discovery directed to the issue, the suit is appropriately dismissed with prejudice. *Tex. Dep't of Crim. Just.–Cmty. Just. Assistance Div. v. Campos*, 384 S.W.3d 810, 815 (Tex. 2012).

Carson asserts generally that she is entitled to discovery of the agreement between TRS and BCBSTX, which she asserts will provide evidentiary basis for her claim that BCBSTX is not entitled to derivative sovereign immunity. Carson had ample opportunity to seek discovery, but failed to obtain a ruling from the trial court on her motion to compel. *See Garcia*, 372 S.W.3d at 643 (declining jurisdictional discovery where plaintiff had "ample opportunity to seek discovery" during the three months between the plea being filed and the hearing on the plea). TRS and the BCBSTX Defendants filed their pleas to the jurisdiction six months after Carson filed suit. Two weeks after the jurisdictional pleas were filed Carson filed her motion to compel production of the agreement between TRS and BCBSTX. Nearly six months later, the trial court held a non-evidentiary hearing, and one month later granted the Defendants' pleas to the jurisdiction with prejudice.

The pleas to the jurisdiction placed Carson on notice that her claims were subject to dismissal under the doctrine of sovereign immunity. *See Fraley*, 664 S.W.3d at 101–02. Carson had ample time to conduct discovery and filed a motion to compel, but failed to obtain a ruling on that motion or object to the trial court's failure to rule. Other than general references to compelling production of the agreement, Carson did not inform the trial court how she would amend her pleadings to assert waiver of immunity for TRS, BCBSTX, and the Individual Defendants.

Accordingly, we conclude the trial court did not err in dismissing Carson's claims with prejudice. *See B.E.C.D.S, Inc. v. Tex. Workforce Comm'n*, No. 15-24-00031-CV, 2025 WL 757247, at *2 (Tex. App.—15th Dist. Mar. 11, 2025, no pet.) (mem. op.) (affirming dismissal with prejudice when plaintiffs failed to file an

24

amended pleading asserting a valid waiver of immunity in the five months the jurisdictional plea was pending or during the time the trial court maintained plenary power). We overrule Carson's third issue.

## CONCLUSION

Having overruled each of Carson's issues on appeal, we affirm the trial court's orders dismissing Carson's claims.


/s/ April Farris
April Farris
Justice


Before Chief Justice Brister and Justices Field and Farris.